IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

**FILED**

OCT 1 2 2004

LARRY W. PROPES, CLERK
COLUMBIA, S.C.

| | |
|---|---|
| Attorneys Liability Protection Society, Inc. )<br>A Risk Retention Group, a Montana )<br>Corporation, )<br>　　　　　　　　　　　　　　　　　　　)<br>　　　　　　　　Plaintiff, )<br>　　　　　　　　　　　　　　　　　　　)<br>vs. )<br>　　　　　　　　　　　　　　　　　　　)<br>Gregory Singleton as Personal )<br>Representative for the Estates of Barry )<br>Naylor, Yvonne Naylor, Emdia Naylor, )<br>Barry Naylor II, individually, Ernest )<br>William Cromartie III, Dinah C. Wiley, )<br>Ernest William Cromartie II and The )<br>Cromartie Law Firm, LLP, )<br>　　　　　　　　　　　　　　　　　　　)<br>　　　　　　　　Defendant. )<br>　　　　　　　　　　　　　　　　　　　) | Civil Action Number _____<br><br>3 04 22519 10 |

---

### COMPLAINT FOR RESCISSION AND DECLARATORY JUDGMENT

---

#### I.　　Parties

1.　　Plaintiff, Attorneys Liability Protection Society, Inc., a Risk Retention Group, (ALPS) is a Montana stock insurance corporation organized and operating under the laws of the State of Montana with its principal place of business in the State of Montana; ALPS is authorized as a risk retention group to insure risks in the State of South Carolina.

2.　　Defendant Gregory Singleton (hereafter Singleton) is a citizen and resident of Orangeburg County, South Carolina. Defendant Singleton is the Successor Personal Representative of the Estates of Barry Naylor (86-ES-40-00679), Yvonne Naylor (86-ES-40- 00594), and Emdia Naylor (88-ES-40-00629). These estates are being



probated in Richland County, South Carolina.

3.      Defendant Barry Naylor II is a citizen and resident of Edgefield County, South Carolina and on information and belief is an heir of the above-named estates.

4.      Defendant Ernest William Cromartie II, is a citizen and resident of Richland County, South Carolina, and is admitted to the South Carolina Bar and maintains an office in said county where he is and has been during all relevant times engaged in the private practice of law. Ernest William Cromartie II is an insured attorney under the ALPS policy.

5.      The Cromartie Law Firm, LLP, named insured under the ALPS policy, is organized under the laws of the State of South Carolina and has its principal place of business in Richland County, South Carolina.

6.      Defendants Ernest William Cromartie III and Dinah C. Wiley are both attorneys with The Cromartie Law Firm, LLP and are also insured attorneys under the policy which is the subject of this action and, on information and belief, both are citizens and residents of Richland County, South Carolina.

**I.      Jurisdiction and Venue**

7.      Jurisdiction in this matter is premised on the diversity of citizenship pursuant to 28 U.S.C. Section 1332(a)(1). The amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      ALPS brings this complaint for rescission and declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. Sections 2201-2202.

9.      Venue is proper in this district pursuant to 28 U.S.C. Section 1391(a) and (b).

2

## II.     Factual Background

10.     At all relevant times and in all dealings with the Plaintiff, Ernest William Cromartie II was acting as authorized agent within the scope of his authority for the Cromartie Law Firm, LLP

11.     On information and belief on or about May 24, 1986, Barry Naylor, an attorney at that time employed by the Cromartie Law Firm, LLP, was involved in an automobile accident resulting in his death as well as the death of his wife, Yvonne Naylor and his daughter, Emdia Naylor.  His son, Barry Naylor II, was injured in the accident, but survived.

12.     The Cromartie Law Firm, LLP and Defendant Cromartie II both (hereafter at times collectively referred to as Defendants Cromartie or Respondents Cromartie) undertook the representation of the personal representative of the Naylor estates and/or the decedents' statutory wrongful death beneficiaries related to the "probate of the estate of [Mrs. Naylor], representing them as it relates to the car accident which resulted in the death of [Mrs. Naylor] and any other legal matters pursuant thereto."

13.     That beginning at the latest during January, 2001, Defendant Gregory Singleton as Personal Representative of the Estates of Barry Naylor, Yvonne Naylor, and Emdia G. Naylor asserted in writing dissatisfaction with the handling of legal matters by Defendant Cromartie II for these estates in that some of the estates had been open for over fourteen years and, in addition, the files from the Richland County Probate Court contain one or more Rules to Show Cause to the Cromartie Law Firm, LLP requiring the law firm and the Personal Representative to show cause why they should not be held in

contempt of court. In addition, Defendant Singleton wrote, "In addition, the files all are replete with notices of delinquencies from several probate judges. These files paint a picture of a law firm and its lawyers who have been derelict in their duties in the representation of these estates."

14.     That, in addition, on January 19, 2001, Defendant Gregory Singleton as Personal Representative wrote in a letter of the same date that Mr. Cromartie had failed after numerous requests to turn over the trust files for each file in order to have an outside agency do an accounting of the transactions done in each estate. Further, Defendant Singleton wrote that he in his capacity as personal representative was disturbed that he could not account for hundreds of thousands of dollars that was handled in trust by Mr. Cromartie and his law firm.

15.     The Cromartie Law Firm, LLP and Defendant Cromartie II on or before March 26, 2001, had been made aware of the letters of complaints and the general dissatisfaction of Dr. Gregory Singleton, as Personal Representative, concerning the information provided to him and the level of professional services rendered by Defendant Cromartie Law Firm, LLP and its attorneys.

16.     On or about July 12, 2002, Defendant Gregory Singleton, as Personal Representative of the Estate of Barry Naylor commenced an action against Defendant Cromartie II and the Cromartie Law Firm, LLP in the Richland County Probate Court, case number 86-ES-40-00679.(a copy of said summons and petition is attached hereto and made a part hereof as exhibit "A".)

17.     In the aforesaid petition filed against Defendants Cromartie Law Firm, LLP and Cromartie II, Defendant Singleton alleges, *inter alia*, that Respondents

Cromartie had been dilatory in administering and closing the Estate despite repeated letters of demand from the Probate Court, that Respondents Cromartie maintained complete financial control of the Estate and yet could not produce copies of bank statements for the trust account, and that Respondents Cromartie commingled assets of the Estate with the assets of two related estates, making it impossible to discern the appropriateness of expenditures.

18.    Further, Defendant Singleton in the aforesaid petition alleges that Respondents Cromartie had damaged the Estate by the filing of inaccurate or incomplete information in the Probate Court, such as the descriptions of real estate showing incorrect beneficiary designations and that Respondents Cromartie had breached their fiduciary obligation to act only in the best interest of the Estate, to segregate and to safeguard the assets of the Estate, to account for their handling of the Estate business, and to proceed expeditiously with the administration and closing of the Estate.

19.    On or about September 11, 2002, Defendants Cromartie filed their Answer and Counterclaim to the aforesaid Summons and Petition.  (A copy of the Answer and Counterclaim of Defendants Cromartie is attached hereto as Exhibit "B" and made a part hereof.)

20.    On or about October 1, 2002, the depositions of defendants Gregory Singleton and E. W. Cromartie II were taken in the above referenced probate court action.

21.    On or about October 14, 2002, Defendants Cromartie filed their Notice of Motion and Motion to Remove Case to Circuit Court seeking to assert a right of trial by jury in the aforesaid probate court action. (A Copy of the Notice of Motion And Motion

to Remove Case to Circuit Court is attached hereto as Exhibit "C".)

22.    On or about December 23, 2002, The Honorable Amy W. McCulloch, Richland County Probate Judge, issued the court's order denying the motion to remove and for trial by jury. (A copy of this order is attached hereto as Exhibit "D" and made a part hereof.)

23.    On or about September 11, 2002, Defendants Cromartie filed their Notice of Appeal of the Probate Court's order of December 23, 2002.

24.    The Cromartie Law Firm, LLP, through its principal attorneys applied to the Plaintiff for an Attorneys Liability Protection Plan by way of its April 2003 application, said application attached hereto as Exhibit "E" and made a part hereof, hereafter referred to as the Cromartie Application.

25.    ALPS, in reliance upon the Cromartie application, issued policy number ALPS5192-3 to Cromartie Law Firm, LLP for the policy period 5-1-03 to5-1-04, a copy of said policy is attaced hereto as Exhibit "F". The named insured attorneys were Ernest William Cromartie II, Ernest W. Cromartie III and Dinah C. Wiley. The ALPS policy contains a limit of one million dollars for each claim and an aggregate of one million dollars coverage.

26.    The Plaintiff was never informed on or before the submission of the Cromartie application by the Cromartie Law Firm, LLP through its principal attorneys about the letters of complaint and court action of Defendant Singleton described above.

27.    On or about January 29, 2004, Defendants Singleton and Barry Naylor II entered suit against The Cromartie Law Firm, LLP and Ernest William Cromartie II seeking damages resulting from the alleged negligent probating of the Naylor estates,

6

said summons and complaint attached hereto as Exhibit "G" and made a part hereof.

## COUNT ONE
### (Rescission)

28.     The Plaintiff reasserts the above allegations which are consistent with the

following allegations.

29.     The ALPS policy defines the "entire contract" to include the Insured's

application for insurance as follows:

> 3.14.1  By acceptance of this policy, the Insured agrees that
> the statements in the declaration and in the Insured's
> application for this policy are true and correct, that the
> declarations and the Insured's application form a part of
> this policy, that the policy is issued in reliance upon the
> truth of such representations and that this policy embodies
> all agreements existing between the Insured and the
> company relating to this insurance.

30.     ALPS relied on the statements and representations made by Cromartie

Law Firm, LLP through its principal attorneys in the Cromartie application in issuing the

ALPS policy and would not have issued said policy had the Cromartie Law Firm, LLP,

through its attorneys answered the questions on said application correctly and truthfully

and as warranted.

31.     The Defendant's application for the ALPS policy contained the following

warranty in the form shown:

> **WARRANTY:      THE    SUBMITTING    PARTY
> WARRANTS    THAT    THE    INFORMATION
> CONTAINED HEREIN IS TRUE AND CORRECT AS
> OF THE DATE THIS APPLICATION IS EXECUTED
> AND THAT IT SHALL BE THE BASIS OF THE
> POLICY   OF   INSURANCE   AND   DEEMED
> INCORPORATED   THEREIN   IF   ATTORNEYS
> LIABILITY   PROTECTION   SOCIETY,   A   RISK
> RETENTUON GROUP (THE COMPANY) ACCEPTS
> THIS APPLICATION BY ISSUANCE OF A POLICY**

7

32.     The insured firm warranted through its attorney-insurance contact as well as the other attorneys in the firm that they had no knowledge or information of any incident or occurrence which might give rise to a claim being made involving the probating of the Estates of Barry Naylor, Yvonne Naylor, Emdia Naylor, and the professional services rendered to the conservatorship for Barry Naylor II.

33.     The warranty made by the firm through its attorneys was false and constitutes a misrepresentation in that at the time the insured firm submitted the Cromartie application to ALPS the firm through its attorneys knew of incidents which might give rise to a claim involving the estates of Barry Naylor, Yvonne Naylor, Emdia Naylor, and the professional services rendered to the conservatorship for Barry Naylor II.

34.     The Cromartie Law Firm through its attorneys had knowledge of the false statements and/or misrepresentations it made in its application for the ALPS policy at the time the application was submitted to ALPS.

35.     The false statements and/or misrepresentations made by The Cromartie Law Firm, LLP, were made intentionally to deceive and/or mislead ALPS and were material to the risk(s) insured against in the ALPS policy.

36.     ALPS has previously tendered return of the premium plus interest to the Cormartie Law Firm, LLP and seeks herein to exercise its right under the law to rescind the ALPS policy and the right to a declaration that the ALPS policy is void, ab initio.

**COUNT TWO**
(Exclusion for commingling of funds)

37.     The Plaintiff reasserts the above allegations which are consistent with the

8

following allegations.

38.    The ALPS policy contains the following exclusion:

> 2.1 This policy does not apply:
> 2.1.17    To any claim arising out of conversion, misappropriation, or improper commingling of client's funds or trust account funds

39.    The Defendant law firm and Ernest William Cromartie II have, according to allegations made by Defendant Singleton, commingled funds among the subject estates.

40.    Exclusion 2.1.17 in the ALPS policy precludes coverage with no duty to defend or indemnify as to the damages asserted for commingling of client funds asserted by Singleton and the Plaintiff as an alternative to its claim for rescission seeks a declaratory judgment so finding.

**COUNT THREE**
(Exclusion of claim as to prior undisclosed acts)

41.    The Plaintiff reasserts the above allegations which are consistent with the following allegations.

42.    The ALPS policy contains the following exclusion:

> 2.1 This policy does not apply:
>
> 2.1.10  To any claim based on or arising out of any act, error or omission occurring prior to the effective date of this policy if the Insured at the effective date knew that such act, error or omission might be the basis of a claim or suit; . . .

43.    Upon information and belief by reason of the conduct alleged in both the Singleton Probate Court Petition as well as other complaints the Defendant law firm and

one or more of its individual attorneys knew prior to May 1, 2003, the effective date of the subject policy, of the acts, errors or omissions set out in the Probate Court Petition and other Singleton complaints and that these acts, errors or omissions might be the basis of a claim or suit.

44.    Exclusion 2.1.10 contained in the ALPS policy precludes coverage with no duty to defend or indemnify as to the damages asserted in the Probate Court Petition and the Circuit Court complaint and the Plaintiff seeks as an alternative to its rescission claim a declaratory judgment so finding.

**COUNT FOUR**
(Exclusion for claims based on disputes over fees)

45.    The Plaintiff reasserts the above allegations which are consistent with the following allegations.

46.    The ALPS policy contains the following exclusion:

2.1    This policy does not apply:
2.1.19    To any claim based on disputes over fees for professional services.

47.    To the extent that Defendant Singleton seeks damages from The Cromartie Law Firm, LLP and/or Ernest William Cromartie II for fees for professional services in the aforesaid actions, Exclusion 2.1.19 contained in the ALPS policy precludes coverage with no duty to defend or indemnify as to claims based on disputes over fees for professional services and the Plaintiff seeks as an alternative to its rescission claim a declaratory judgment so finding.

## COUNT FIVE
(Claims not within Insuring Agreement Provisions)

48.    The Plaintiff reasserts the above allegations which are consistent with the following allegations.

49.    The ALPS policy in section 1, entitled "Insuring Agreements" provides for the terms under which ALPS, subject to the limits of liability, exclusions, conditions, and other terms of the policy, agrees to extend coverage to the named insureds.

50.    On information and belief the recovery sought by Singleton in both of the actions instituted against The Cromartie Law Firm, LLP and Ernest William Cromartie II is outside the coverage afforded by the policy insuring agreement and the Plaintiffs seeks as an alternative to its rescission claim a declaratory judgment finding the Plaintiff has no duty to defend or indemnify under the facts of this case.

THEREFORE, ALPS respectfully requests that this Honorable Court provide the following relief:

A.    Issue its order that the subject ALPS policy is rescinded and is void ab initio;

B.    As an alternative, declare that the ALPS policy does not provide coverage and, therefore, that the Plaintiff has no duty to defend or indemnify as to the Singleton suits, the Probate Court Action or the Circuit Court complaint by operation of one or more of the exclusions contained in the ALPS policy alleged hereinabove or by operation of the Insuring Agreement;

C.    For such other and further relief that is available under the law and equity and as this Court deems just and proper.

**Signature on next page.**

11

**Complaint, ALPS v. Singleton, et al**

RESPECTFULLY SUBMITTED.

> BRUNER, POWELL, ROBBINS, WALL
>
> & MULLINS, LLC
>
> Warren C. Powell, Jr.
> Federal ID Number 3138
> 1735 St. Julian Place, Suite 200 (29204)
> P.O. Box 61110
> Columbia, SC  29260
> (803) 252-7693
>
> Attorneys for the Plaintiff
> Attorneys Liability Protection Society

Columbia, South Carolina

October 12, 2004

**Exhibit List**
**ALPS v. Singleton as Personal Representative, et al**

A.    Summons and Petition, Richland County Probate Court, 86-ES-40-00679

B.    Answer and Counterclaim of Defendants Cromartie, Richland County Probate Court, 86-ES-40-00679

C.    Notice of Motion and Motion to Remove Case to Circuit Court, Richland County Probate Court, 86-ES-40-00679

D.    Order of Judge McCulloch denying motion to remove case to Circuit Court, Richland County Probate Court, 86-ES-40-00679

E.    Cromartie Law Firm's April 2003 Application to ALPS

F.    ALPS policy (ALPS 5192-3) for period 5-1-03 – 5-1-04

G.    Complaint, <u>Singleton as Personal Representative, et al v. The Cromartie Law Firm, LLP</u>, Civil Action Number 04-CP-40-0476

**EX. A**

FILED

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

IN THE PROBATE COURT
CASE NUMBER 86-ES-40-00679
02 JUL 12 PM 12:25

AMY M. McCULLOCH
PROBATE JUDGE
RICHLAND COUNTY, S.C.

Gregory Singleton, as Personal Representative  )
of the Estate of Barry Naylor,                 )
                                               )
          Petitioner,                          )
                                               )              **SUMMONS**
vs.                                            )
                                               )
E. W. Cromartie, II and                        )
Cromartie Law Firm, L.L.P.,                    )
                                               )
          Respondents.                         )
                                               )
IN RE: ESTATE OF BARRY NAYLOR                  )

TO:    THE RESPONDENTS ABOVE NAMED:

        YOU ARE HEREBY SUMMONED and required to answer the Petition for Review of
Compensation in this action (the original of which has been filed with the Clerk of Probate Court for
Richland County) and to serve a copy of your Answer or other responsive pleading to the said
Petition for Review of Compensation on the subscriber at 1515 Lady Street, Post Office Box 12129,
Columbia, South Carolina, 29211, within thirty (30) days after service thereof, exclusive of the date
of such service, and if you fail to appear, answer or defend the Petition for Review of Compensation
within the time aforesaid, judgment by default will be rendered against you for the relief demanded
in the Petition for Review of Compensation.

                                        SWEENY, WINGATE & BARROW, P.A.

                                        BY: _Kenneth B. Wingate_
                                            Kenneth B. Wingate
                                            1515 Lady Street
                                            Post Office Box 12129
                                            Columbia, South Carolina 29211
                                            (803) 256-2233
                                            ATTORNEYS FOR PETITIONER

July _12_, 2002

FILED

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

IN THE PROBATE COURT
CASE NUMBER 86-ES-40-00679

AMY W. McCULLOCH
PROBATE JUDGE
RICHLAND COUNTY, S.C.

Gregory Singleton, as Personal Representative
of the Estate of Barry Naylor,

      Petitioner,

vs.

E. W. Cromartie, II and
Cromartie Law Firm, L.L.P.,

      Respondents.

IN RE: ESTATE OF BARRY NAYLOR

)
)
)
)
)
)
)
)
)
)
)
)
)

**PETITION FOR REVIEW OF
COMPENSATION**

The Petitioner, Gregory Singleton, as Personal Representative of the Estate of Barry Naylor,

would show that:

    1.    Barry Naylor died intestate a resident of Richland County, South Carolina, on May

24, 1986. The estate is being administered in Richland County Probate Court, Case Number 86-ES-

40-00679.

    2.    Petitioner is the duly appointed and acting Personal Representative of the Estate.

    3.    Respondent E. W. Cromartie, II, and his law firm have served as attorneys for the

Estate from its inception.

    4.    Pursuant to Section 62-1-302 of the South Carolina Probate Code, this court has

exclusive, original jurisdiction over all subject matter related to the estates of decedents.

    5.    Pursuant to Section 62-3-201(b) of the South Carolina Probate Code, venue lies in

this court.

    6.    Respondents have received compensation in excess of $86,000 plus costs for legal

services rendered in connection with this and two related estates.

1

7. Respondents have been dilatory in administering and closing the Estate, despite repeated letters of demand from the Probate Court.

8. Respondents have maintained complete financial control of the Estate, running receipts and disbursements through the law firm's trust account, and yet cannot produce copies of bank statements for the trust account.

9. Respondents have commingled assets of the Estate with assets of two related estates, making it impossible to discern the appropriateness of expenditures.

10. Respondents have damaged the Estate by the filing of inaccurate or incomplete information in the Probate Court, such as descriptions of real estate showing incorrect beneficiary designations, requiring remedial work to correct the mistakes.

11. As attorneys for the Estate, Respondents have breached their fiduciary obligation to act only in the best interest of the Estate, to segregate and to safeguard the assets of the Estate, to account for their handling of Estate business, or to proceed expeditiously with the administration and closing of the Estate.

12. Petitioner is informed and believes that the compensation paid to Respondents has been excessive.

13. Petitioner has incurred attorneys fees and costs on behalf of the Estate in connection with pursuing this matter.

WHEREFORE, Petitioner prays that this Court review the reasonableness of the compensation of the Respondents and issue its order:

(a) Determining the reasonableness of the compensation of the Respondents, and if applicable, requiring Respondents to reimburse the Estate for any excessive compensation;

(b)    Requiring Respondents to reimburse the Estate for attorneys fees and costs incurred in connection with this matter; and

(c)    Granting such other and further relief as the court deems appropriate.

THE PETITIONER SO PRAYS.

SWEENY, WINGATE & BARROW, P.A.

BY: _Kenneth B. Wingate_
Kenneth B. Wingate
1515 Lady Street
Post Office Box 12129
Columbia, South Carolina 29211
(803) 256-2233
ATTORNEYS FOR PETITIONER

July _12_, 2002

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

IN THE PROBATE COURT
CASE NUMBER 88-ES-40-00629

Gregory Singleton, as Personal Representative
of the Estate of Emdia G. Naylor,

      Petitioner,

vs.

E. W. Cromartie, II and
Cromartie Law Firm, L.L.P.,

      Respondents.

IN RE: ESTATE OF EMDIA G. NAYLOR

)
)
)
)
)
)
)
)
)
)
)
)

**CERTIFICATE OF SERVICE**

I, the undersigned secretary of the law offices of Sweeny, Wingate & Barrow, P.A., attorneys for Petitioner, Gregory Singleton, do hereby certify that I have served a copy of the Summons and Petition for Review of Compensation in connection with the above-referenced case by mailing a copy of the same by Certified United States Mail, Return Receipt Requested, Restricted Delivery, postage prepaid, to the following addresses (to Mr. Bogan via ordinary first class mail):

E.W. Cromartie, III, Esquire (Certified Mail, Return Receipt Requested, Restricted Delivery)
Cromartie Law Firm, L.L.P.
1607 Harden Street
Columbia, South Carolina 29201

Cromartie Law Firm, L.L.P. (Certified Mail, Return Receipt Requested, Restricted Delivery)
ATTN: E.W. Cromartie, III, Esquire
1607 Harden Street
Columbia, South Carolina 29201

J. Steedley Bogan, Esq. (Ordinary First Class Mail)
Post Office Box 12489
Columbia, South Carolina 29211-2489

Amy J. Stambaugh

Columbia, South Carolina
July 12, 2002

**EX. B**

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

GREGORY SINGLETON, AS PERSONAL
REPRESENATIVE OF THE ESTATE OF
BARRY NAYLOR,

PETITIONER,

VS.

E.W. CROMARTIE, II AND CROMARTIE
LAW FIRM, L.L.P,

RESPONDENTS.

IN RE: ESTATE OF BARRY NAYLOR

IN THE PROBATE COURT

CASE NO. 86-ES 40-00679

# ANSWER & COUNTERCLAIM

## (JURY TRIAL DEMANDED)

The Respondents fully answering the Petition for Review of Compensation would respectfully show unto the court:

### FOR A FIRST DEFENSE

### (GENERAL DENIAL)

1. The Respondents deny each and every allegation of the Petition for Review of Compensation, hereinafter referred to as the "Petition" that are not herein specifically admitted, modified or explained.

2. The Respondents admit the allegation of Paragraphs One (1), Two (2), Three (3), Four (4), and Five (5) of the Petition.

3. The Respondent denies the allegations of Paragraph Six (6) of the Petition and would show that the Respondents have received the sum of Ten Thousand Nine Hundred Seventy Four and 68/100 ($10,964.68) Dollars for legal services rendered in connection with the two related estates. Any other fees earned by the Respondent were contingency

1

fees for personal injury settlements make on behalf of the Estates in accordance with a written fee agreement dated May 27, 1986.

4. The Respondents deny that portion of Paragraph Seven (7) of the Petition that states that the Respondents have been dilatory in the administering and closing of the Estate.

5. The Respondents deny that portion of Paragraph Eight (8) of the Petition that alleges the Respondents had maintained complete financial control of the Estate and would show that, throughout the administration of this complex estate, there were many parties and entities which had control over assets of the Estate including Gregory Singleton, Jesse Singleton, Nayco Computer Systems, Massachusetts Mutual Life and Citizens & Southern National Bank Trust Department, NationsBank, Bank of American and Victory Savings Bank.

6. The Respondents admit that portion of Paragraph Eight (8) that alleges that Respondents were running receipts and disbursement through the law firm's trust account and that Respondents have been unable to locate copies of the bank statements for this account. The Respondent has provided the Petitioner with copies of all the records and documentation it can locate related to this account.

7. The Respondents admit that portion of Paragraph Nine (9) that alleges that the assets of the Estates have been commingled into one Account. The Respondents are informed and believes that the Richland County Probate court was informed that the Estate Accounts would be run out of one account and that the Court approved of this procedure.

8. The Respondents deny the allegations of Paragraphs Ten (10), Eleven (11), and Twelve (12) of the Petition.

9. The Respondents lack sufficient information to form a belief as to the allegations of Paragraphs Thirteen (13) of the Petition and therefore denies same damanding strick ~~strick~~ *strict* proof thereof.

2

## FOR A SECOND DEFENSE

### (WAIVER)

10. Further Answering the Petition and as a Second Defense the Respondents repeat and reiterate each and every allegation of the First Defense as if fully stated herein and would further state that the last attorney fee taken in this matter was taken by the Respondents on December 24, 1989 and the Petitioner has waived any claim they might have had by waiting over 11 years before objecting to the fee taken.

## FOR A THIRD DEFENSE

### (LACHES)

11. Further Answering the Petition and as a Third Defense the Respondents repeat and reiterate each and every allegation of the First and Second Defenses as if fully stated herein and would further state that the Petitioner's claim is barred by the doctrine of laches.

## FOR A FOUTH DEFENSE

### (STATUTE OF LIMITATION)

12. Further Answering the Petition and as a Fourth Defense the Respondents repeat and reiterate each and every allegation of the First, Second and Third Defenses as if fully stated herein and would further state any claim by the Petitioners in whole or in part is barred by the applicable statute of limitations.

## FOR A FIFTH DEFENSE

### (FAILURE TO STATE FACTS)

13. Further Answering the Petition and as a Fifth Defense the Respondents repeat and reiterate each and every allegation of the First, Second, Third, and Fourth Defenses as if

3

fully stated herein and would further state that the Petition fails to state facts sufficient to

constitute a cause of action and should therefore be dismissed pursuant to Rule 12(b)(6)

of the South Carolina Rules of Civil Procedure.

### FOR A SIXTH DEFENSE AND COUNTERCLAIM

### (ATTORNEY FEES AND COSTS)

14. Further Answering the Petition and as a Sixth Defense and Counterclaim the Respondents

repeat and reiterate each and every allegation of the First, Second, Third, Fourth, and

Fifth Defenses as if fully stated herein and would further state that from on or about May

27, 1986 until the Petitioner obtained new counsel to probate the Naylor Estates, pursuant to

a contract for legal services dated May 27, 1986, the Respondents performed extensive

legal services on behalf each of the Naylor Estates, for which it has not been paid.

15. Respondents are informed and believes that they are entitled to attorney fees pursuit to

the contract of employment dated May 27, 1986 or in the alternative for an attorney fee

based on the reasonable value of the work done and legal services provided on behalf of

the Naylor Estates.

16. Respondents have fully cooperated with the Petitioner and his attorney in an attempt to

get these Estates closed and is informed and believes that Petitioner's action in bring an

action against the Respondents is unreasonable and unnecessary to the closing of the

Estates has caused Respondents to incur numerous attorney fees and costs in connection

with the Defense of this action. Respond requests that the Court inquire into the matter

and award Respondents reasonable attorney fees and costs in connection with the

Defense of this Action.

4

WHEREFORE having fully answered the Petition, the Respondents request that the Petitioner be denied the relief requested in his Petition, that the Respondents be granted the relief requested in the Sixth Defense and Counterclaim and for such other and further relief which to the court seems just and proper.

BOGAN LAW FIRM

J. Steedley Bogan
Attorney for the Respondents
P.O. Box 12489
Columbia, SC 29211-2489
Telephone: (803) 256-6747
Facsimile: (803) 771-0610
Email: jsb@scbar.org

STANLEY LAW FIRM

H. Ronald Stanley
Attorney for the Respondents
P.O. Box 7722
Columbia, SC 29202
Telephone: (803) 799-4700
Facsimile: (803) 799-3036

Columbia, South Carolina
September 11, 2002

# JURY TRIAL DEMANDED

FILED

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

GREGORY SINGLETON, AS
PERSONAL REPRESENATIVE OF THE
ESTATE OF EMDIA G. NAYLOR,

PETITIONER,

VS.

E.W. CROMARTIE, II AND
CROMARTIE LAW FIRM, L.L.P,

RESPONDENTS.

IN RE: ESTATE OF EMDIA G.
NAYLOR

IN THE PROBATE COURT

CASE NO. 88-ES 40-00629

**AFFIDAVIT OF
PERSONAL SERVICE**

**PERSONALLY** appeared before me Allison Swygert who upon being duly

sworn deposes and says that she served the Answer and Counterclaim in the above-

captioned action by personal delivery on September 12, 2002 to the following:

Kenneth B. Wingate, Esquire
1515 Lady St.
Columbia, SC 29201

Allison Swygert

SWORN to before me this
13th day of September 2002.

(L.S.)
Notary Public for South Carolina
My commission expires: Apr 19, 2009

**EX. C**

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

GREGORY SINGLETON, AS
PERSONAL REPRESENTATIVE OF
THE ESTATE OF BARRY NAYLOR

PETITIONER,

VS.

E.W. CROMARTIE, II AND CROMARTIE
LAW FIRM, L.L.P.,

RESPONDENTS.

IN RE: ESTATE OF BARRY NAYLOR

IN THE PROBATE COURT

86-ES-40-0079

**NOTICE OF MOTION
AND MOTION TO
REMOVE CASE TO
CIRCUIT COURT**

TO:    KENNETH B. WINGATE, ATTORNEY FOR THE PETITIONER :

YOU WILL PLEASE TAKE NOTICE that the Defendants, by and through his undersigned attorney, do hereby move to remove this action to the Richland County Circuit Court. This motion is made pursuant to South Carolina Code Section 62-1-302 (c) that provides that upon motion of a party an action or proceeding must be removed where there is a right to trial by jury and on which the amount in controversy exceeds Five Thousand ($5,000) Dollars.

BOGAN LAW FIRM

J. STEEDLEY BOGAN
1320 Washington Street, Suite N
Columbia, SC  29201-3312
(803) 256-6747
Attorney for Respondent

Columbia, South Carolina
October 14, 2002

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

GREGORY SINGLETON, AS
PERSONAL REPRESENATIVE OF THE
ESTATE OF BARRY NAYLOR,

                    PETITIONER,

    VS.

E.W. CROMARTIE, II AND
CROMARTIE LAW FIRM, L.L.P,

                 RESPONDENTS.

IN RE: ESTATE OF BARRY NAYLOR

IN THE PROBATE COURT

CASE NO. 86-ES 40-00679

# AFFIDAVIT OF PERSONAL SERVICE

**PERSONALLY** appeared before me Allison Swygert who upon being duly sworn deposes and says that she served the Notice of Motion and Motion to Remove Case to Circuit Court in the above-captioned action by personal delivery on October 14, 2002 to the following:

        Kenneth B. Wingate, Esquire
        1511 Lady St.
        Columbia, SC 29201

                            Allison Swygert

SWORN to before me this
14th day of October 2002.

_____ (L.S.)
Notary Public for South Carolina
My commission expires:

**EX. D**

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

Gregory Singleton, as Personal Representative
of the Estate of Yvonne Naylor,

     Petitioner,

vs.

E. W. Cromartie, II and
Cromartie Law Firm, L.L.P.,

     Respondents.

IN RE: ESTATE OF YVONNE NAYLOR

IN THE PROBATE COURT
CASE NUMBER 86-ES-40-00594

)
)
)
)
)
)
)
)
)
)
)
)

ORDER DENYING MOTIONS
TO REMOVE AND FOR
TRIAL BY JURY

This matter comes before the Court pursuant to a Notice of Motion and Motion to Remove

Case to Circuit Court, dated October 14, 2002, filed by the Respondents, and pursuant to

Petitioner's Motion to Try This Case Without a Jury, dated October 10, 2002, filed by the

Petitioner. A hearing on these matters was held on November 26, 2002. Present at the hearing were

the Personal Representative, Dr. Gregory Singleton, and his attorney, Kenneth B. Wingate. Also

present were the Respondent, E. W. Cromartie, II, and his attorney, J. Steedley Bogan. All parties

were properly and timely served with the pleadings.

     Based upon a review of the pleadings, a review of the statutory and case law asserted, and

the arguments of counsel at the hearing, I make the following findings of fact and conclusions of

law:

     1.    The Respondents moved the Court to remove this action to the Richland County

Circuit Court. Such motion was made pursuant to South Carolina Code Ann. Section 62-1-302(c)

that provides "any action or proceeding filed in the probate court and relating [to an action in which

a party has a right to trial by jury and which involves an amount in controversy of at least five



thousand dollars in value], on motion of a party ... made not later than ten days following the date on which all responsive pleadings must be filed, must be removed to the circuit court."

2.    The allegations contained in Petitioner's Petition for Review of Compensation are for an accounting, unjust enrichment, amounts of attorney's fees, and abuse of a fiduciary relationship. These claims all sound in equity.

3.    In equity, the parties are not entitled to a trial by jury. <u>Williford v. Downs</u>, 265 S.C. 319, 218 S.E.2d 242 (1975). Therefore, the Respondents are not entitled to a trial by jury as a right regarding these matters.

4.    The counterclaim by Respondents is for attorney's fees, which is an equitable matter for a court's determination. <u>Flynn v. Nationwide Mut. Ins. Co.</u>, 281 S.C. 391, 315 S.E.2d 817 (Ct.App.1984).

5.    Venue is proper in this Court.

6.    This Court has jurisdiction over the parties and subject matter herein.

Based on the foregoing findings of fact and conclusions of law,

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:

1.    That Respondents' Motion to Remove Case to Circuit Court is denied for the reasons cited.

2.    That the matters included in Petitioner's Petition for Review of Compensation shall be heard by this Court without a jury.

AND IT IS SO ORDERED.

Amy W. McCulloch
Richland County Probate Judge

Columbia, South Carolina
December 23,



**EX. E**



R


**ALPS**
Attorneys Liability Protection Society
*A Risk Retention Group*

**Application**
Claims Made and Reported Policy

Please update the information below to reflect status as of the effective date.

1. Firm Name: The Cromartie Law Firm, LLP

2. Address: 1607 Harden Street
P. O. Box 8417
Columbia, SC 29202

County: **RICHLAND**
Website: **WWW.CROMARTIELAW.COM**

3. Insurance Contact: Mr. Ernest W. Cromartie
Office Manager: Ms. Gloria Woodard
Telephone: (803) 256-3462
Fax: (803) 765-2671
E-mail: **GPWOOD@CROMARTIELAW.COM**

4. Please attach a copy of your current letterhead

5. Desired Policy Effective Date: 5/1/2003

6. Organization Type: Individual [X] Partnership [ ] Corporate [ ] Association [ ] Other [ ]

7. Partner: 1    Other Attorneys: 2    Of Counsel: 0    Law Clerks /Paralegals: **XX** 2
   Accountants: 1    Abstractors: 0    Clerical/Sec: 0    Part-time employees: 0

8. Date this or predecessor firm was established: 04/19/1973

9. Earliest date this or predecessor firm has had continuous professional liability insurance: 05/01/2000

10. Is this firm the majority successor (acquired over 50% of assets and liabilities) in interest of any other law firm? (If yes, please attach separate explanation)    Yes [ ] No [X]

11. Does your firm share office space with other attorneys?    Yes [ ] No [X]

12. List of Principals and employed attorneys:

| Name | Retroactive Coverage Date |
|------|---------------------------|
| Cromartie II, E. W. | 05/01/2000 |
| Cromartie, Ernest W. | 04/29/2002 |
| Wiley, Dinah C. | 06/05/2000 |

13. Coverage Options: (Choose one or more)

| | | Deductible Options: | |
|---|---|---|---|
| [ ] $ 500000 each claim | [ ] $ 1000000 aggregate | [X] $ 1,000 | [ ] $25,000* |
| [XX] $ 1000000 each claim   XX | [ ] $ 1000000 aggregate | [ ] $ 2,500 | [ ] $50,000* |
| [ ] $ 1000000 each claim | [ ] $ 2000000 aggregate | [ ] $ 5,000 | [ ] $100,000* |
| [ ] $ N/A each claim | [ ] $ N/A aggregate | [ ] $10,000 | |
| [ ] $ N/A each claim | [ ] $ N/A aggregate | | |
| [ ] $ N/A each claim | [ ] $ N/A aggregate | *Financial Statement Required | |
| [ ] Other | | | |

**Firm 1**

RECEIVED MAY 0 1 2003

## Risk Management Profile

Please show the firm's history of prior professional liability insurance for the last 6 years:

| Year | Expiration Date | Insurance Co. | Limit of Liability | Deductible |
|------|-----------------|---------------|--------------------|------------|
| 05/01/2001 | 05/01/2002 | ALPS | 500,000 | 1,000 |
| 05/01/2000 | 05/01/2001 | ALPS | 1,000,000 | 1,000 |
| 05/01/2000 | 05/01/2001 | ALPS | 1,000,000 | 1,000 |
| **05/01/2002** | **05/01/2003** | **ALPS** | **1,000,000** | **1,000** |
|  |  |  |  |  |
|  |  |  |  |  |

1. If you are a solo practitioner, do you have a back-up attorney to handle cases in your absence?    Yes ☒ No ☐

2. Does your conflict avoidance system ascertain conflicts between firm members, present and past clients, individuals and family members with interests in business entities?    Yes ☒ No ☐

3. When a conflict of interest can be resolved by consent of the parties, do you obtain such consent in writing?    Yes ☒ No ☐

4. Do you advertise your services in the commercial media? Attach copies of any advertising. Does your firm maintain or sponsor, or is it otherwise to your knowledge mentioned in, a website on the internet? If yes, please provide the internet address for each website    Yes ☒ No ☐

5. Do you have at least two independent date controls for your calendaring system?    Yes ☒ No ☐
6. Is the docket control system and procedure computerized?    Yes ☒ No ☐
7. Does the control system produce a weekly calendar?    Yes ☒ No ☐
8. Does responsibility for docketing rest with the attorney assigned to the case?    Yes ☐ No ☒
9. If your firm maintains other office locations, list all such locations. Circle the location at which the majority of fees are generated? _____

10. If you initiate any suits to collect fees for your firm's services, list how many in the past year. _____
Do you have a file review procedure prior to initiating suit?    Yes ☐ No ☒
Please describe or attach your procedures for bringing suit.

11. Do you require an engagement letter and fee agreement when accepting new clients?    Yes ☒ No ☐
12. Does your firm use disengagement letters when services are complete?    Yes ☒ No ☐
13. Do you notify clients and prospective clients in writing when you decline to represent them?    Yes ☒ No ☐

14. If any attorney in your firm is aware of any Professional Liability claim(s) made against him or her during the past five years, list how many. _____
For each claim, complete a claim supplement. Also,
if against a current attorney in the firm, complete question 7 of Individual Attorney Supplement.    Yes ☐ No ☒

15. Does any firm member have knowledge or information of any incident or occurrence which might give rise to a claim being made? If yes, complete a Claim Supplement for each such incident, or provide complete details.    Yes ☐ No ☒

16. During the past seven years, has any professional liability insurance carrier or Lloyds of London declined issue, canceled, refused to renew or agreed to accept only on special terms, coverage for any attorney in your firm? (If yes, provide details.)    Yes ☐ No ☒

17. Has any attorney in your firm ever been refused admission to practice, disbarred, suspended from practice, or formally reprimanded by any court or administrative agency? (If yes, provide details.)    Yes ☒ No ☐ SEE "A'

18. Is any attorney in your firm presently charged with, or ever been convicted of professional misconduct, a felony, or in the past three years, a misdemeanor involving the possession or abuse of a controlled substance or alcohol? (If yes, provide details.)    Yes ☐ No ☒

**Firm 2**

**NOTICE TO THE APPLICANT - PLEASE READ CAREFULLY**

WARRANTY: THE UNDERSIGNED WARRANTS THAT THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT AS OF THE DATE THIS APPLICATION IS EXECUTED AND THAT IT SHALL BE THE BASIS OF THE POLICY OF INSURANCE AND DEEMED INCORPORATED THEREIN IF ATTORNEYS LIABILITY PROTECTION SOCIETY, INC., A RISK RETENTION GROUP (THE COMPANY) ACCEPTS THIS APPLICATION BY ISSUANCE OF A POLICY. IT IS HEREBY AGREED AND UNDERSTOOD THAT THIS WARRANTY CONSTITUTES A CONTINUING OBLIGATION TO REPORT TO THE COMPANY (AS SOON AS PRACTICABLE) ANY MATERIAL CHANGE IN THE CIRCUMSTANCES OF THE APPLICANT'S PRACTICE OF LAW, INCLUDING, BUT NOT LIMITED TO, THE SIZE OF FIRM AND THE  INFORMATION CONTAINED ON EACH SUPPLEMENTAL APPLICATION SUBMITTED HEREWITH.

THE UNDERSIGNED HEREBY AUTHORIZES RELEASE OF CLAIM INFORMATION FROM ANY PRIOR INSURER TO THE COMPANY.

DEFENSE OF CLAIMS: IN APPLYING FOR COVERAGE, THE UNDERSIGNED AGREES THAT, IN THE EVENT OF COVERED LOSSES, THE APPLICANT WILL BE REQUIRED TO BE DEFENDED BY THE COMPANY AND THAT, IF THE APPLICANT HAS NOT PURCHASED FIRST DOLLAR DEFENSE COST COVERAGE, THE DEDUCTIBLE SHALL APPLY TO LOSS AND CLAIM EXPENSES, ADJUSTING EXPENSES, INVESTIGATION COSTS AND LEGAL FEES. IF THE APPLICANT ELECTS TO HANDLE A CLAIM WITHOUT IN ANY WAY INVOLVING THE COMPANY, NO COVERAGE FOR THAT CLAIM WILL BE AFFORDED THE APPLICANT UNDER THE POLICY.

CLAIMS MADE POLICY: THE UNDERSIGNED UNDERSTANDS AND ACCEPTS THAT THE POLICY APPLIED FOR PROVIDES COVERAGE ON A "CLAIMS-MADE" BASIS FOR ONLY THOSE CLAIMS WHICH ARE MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY WHILE THE POLICY IS IN FORCE, AND THAT ALL COVERAGE CEASES WITH THE TERMINATION OF THE POLICY UNLESS THE UNDERSIGNED EXERCISES CERTAIN OPTIONS AVAILABLE IN ACCORDANCE WITH THE TERMS OF THE POLICY.

FAILURE TO REPORT CLAIMS: PLEASE BE ADVISED THAT FAILURE TO REPORT ANY CLAIMS MADE AGAINST THE APPLICANT OR ANY ATTORNEY IN THE APPLICANT'S FIRM UNDER ANY CURRENT OR PREVIOUS POLICY OF INSURANCE, OR FAILURE TO REVEAL TIMELY FACTS WHICH MAY GIVE RISE TO A CLAIM AGAINST CURRENT OR PRIOR INSURERS MAY RESULT IN THE ABSENCE OF COVERAGE FOR ANY MATTER WHICH SHOULD HAVE BEEN REPORTED OR IN THE FAILURE OF COVERAGE ALTOGETHER.

THIS APPLICATION MUST BE SIGNED BY AN OWNER, PARTNER OR CORPORATE OFFICER. SIGNING DOES NOT BIND THE APPLICANT OR THE COMPANY.

Date: 4 / 30 / 2004 _____
                                                         Applicant's Signature

**E. W. CROMARTIE, II    MANAGER** _____
          Print or Type Name and Title

**Firm 3**

## Professional Liability Insurance Renewal Application- E. W Cromartie, II

A. I received a public reprimand for failure to adequately supervise an associate attorney of the law firm.



**ALPS**
Attorneys Liability Protection Society
*A Risk Retention Group*

## Individual Attorney Supplement (Complete one per attorney)

Firm Name: The Cromartie Law Firm, LLP

1. Individual Attorney Supplement for: Mr. ☒ Ms. ☐    E. W.  Cromartie  II

    E-mail:

2. Position With Firm: ☒ Partner ☐ Associate ☐ Of Counsel    0    # of billable hours per month  (estimate)

3. During the past 12 months, have you attended or participated in at least 3 hours of CLE seminars on Ethics, Risk Management, Loss Prevention and/or Office Management? Use of video tapes, such as offered by ABA, or attendance at seminars will qualify for a 10% rate credit.    ☒ Yes ☐ No

4. Since what date have you been insured on a continuous basis for professional liability?    05/01/2000

5. Date you joined this or predecessor firm:    01/01/1973

6. Starting date of private practice (not corporate or government):    01/01/1973

7. How many claims have been made against you during the past 5 years, regardless of whether indemnity was paid, or has an indemnity payment of greater than $20,000 been made by you, your firm or an insurance carrier in settlement of a Professional Liability claim against you.

    If so, state the dates and amount of indemnity and complete the Supplemental Claim form for each such claim.

| Date: | | Claimant: | | Amount: $ |
| Date: | | Claimant: | | Amount: $ |

8. Note the percentage of your professional time in private practice devoted to each area below.

| | | |
|---|---|---|
| ____ a. Admiralty/Maritime | ____ j. Entertainment/Sports | ____ u. Oil/Gas |
| ____ b. Anti-trust/Trade Regulation | ____ k. Environmental | ____ v. Patents |
| ____ c. Arbitration/Mediation | ____ l. Estate/Probate/Wills/Trusts | ____ Copyright/Trademark |
| **0** ~~25~~ d. Bankruptcy | ____ m. ERISA/Employee Relations | ____ w. Public Utilities |
| **10** ~~xx~~ e. Civil Litigation–Plaintiffs* | ____ n. Financial Institutions* | 20 x. Real Estate* |
| **15** Civil Litigation–Defendants | ____ o. Gaming/Casino/Representation | ____ y. Securities Exempt/Bonds* |
| ____ f. Collection/Repossession | 5 p. Government | ____ Securities/Registered Offerings* |
| ____ g. Corporation /Business | ____ q. Immigration | ____ z. Social Security |
| ____ Merger and Acquisition | ____ r. International Law | ____ aa. Taxation* |
| ____ h. Criminal | ____ s. Labor Law | 45 bb. Workers Compensation* |
| ____ i. Domestic Relations | ____ t. Natural Resources | 5 cc. Other – Describe _____ |

**100** Total (should equal 100%)

* Provide Supplemental Application for firm if not previously submitted.

IAS 1

## Individual Attorney Supplement (continued for E. W.  Cromartie  II)

*9. If you offer any of the four services below to the public, please show percentage of your total time devoted to the service and provide details of any professional liability insurance covering the service:

| | | | |
|---|---|---|---|
| Insurance Agent/Broker | 0 | Real Estate Agent/Broker | 0 |
| Accountant | 0 | Title Agent/Abstractor | 0 |

*10. If part of your law practice is devoted to any one of the following, please show percentage of your total time devoted to the service and provide details of any professional liability insurance covering the service  and provide copy of employment contract, if remuneration inures to you rather than to the firm:

| | | | |
|---|---|---|---|
| Prosecutor | 0 | Municipal, State, or Corporate Counsel | 0 |
| Public Defender | 0 | | |

11. Social Security Number:   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

12. Date Admitted to Bar    04/11/1973

   a) List Bar Association(s) of which you are a member in good standing      SC

13. Previous employment since admission to Bar:

| Date | Employer/Position | State | Insurance Carrier |
|---|---|---|---|
| 01/01/1973 | The Cromartie Law Firm, LLP | SC | |
| | | | |
| | | | |
| | | | |

*14. Are you a salaried employee of any organization other than the applicant firm?          Yes ☐ No ☒
   If yes, please explain

*15. Do you serve as director or officer, or do you exercise any fiduciary control over any business enterprise other than the applicant firm including profit and not for profit organizations?          Yes ☒ No ☐

a) Please list enterprise(s), nature of the business and position held on separate attachment.
   Also, note whether any "Directors and Officers" liability insurance is maintained. **SEE "B"**
b) Are any of these enterprises clients of the applicant firm?          Yes ☐ No ☒

*16. Do you perform any professional legal services for any other entity other than the Named Insured firm shown in item number one of the Firm Application?          Yes ☐ No ☒
   If yes, please provide the name of the other entity.

_____     Date: 4/30/2004
Attorney's Signature

NOTE:  REFER TO POLICY EXCLUSIONS REGARDING THESE EXPOSURES.

**IAS 2**

**Professional Liability Insurance Renewal Application-E. W. Cromartie, II**

B.  Columbia City Council, which maintains their own liability insurance.



**ALPS**
Attorneys Liability Protection Society
*A Risk Retention Group*

## Individual Attorney Supplement (Complete one per attorney)

Firm Name:   The Cromartie Law Firm, LLP

1. Individual Attorney Supplement for: Mr. ☐ Ms. ☐    Ernest W. Cromartie , III

   E-mail:

2. Position With Firm: ☐ Partner ☒ Associate ☐ Of Counsel   0   # of billable hours per month  (estimate)

3. During the past 12 months, have you attended or participated in at least 3 hours of CLE seminars on Ethics, Risk Management, Loss Prevention and/or Office Management? Use of video tapes, such as offered by ABA, or attendance at seminars will qualify for a 10% rate credit.   ☐ Yes ☐ No

4. Since what date have you been insured on a continuous basis for professional liability?   _____

5. Date you joined this or predecessor firm:   04/29/2002

6. Starting date of private practice (not corporate or government):   04/29/2002

7. How many claims have been made against you during the past 5 years, regardless of whether indemnity was paid, or has an indemnity payment of greater than $20,000 been made by you, your firm or an insurance carrier in settlement of a Professional Liability claim against you. _____

   If so, state the dates and amount of indemnity and complete the Supplemental Claim form for each such claim.

| Date: | | Claimant: | | Amount: $ |
|---|---|---|---|---|
| Date: | | Claimant: | | Amount: $ |

8. Note the percentage of your professional time in private practice devoted to each area below.

| | | |
|---|---|---|
| ____ a. Admiralty/Maritime | ____ j. Entertainment/Sports | ____ u. Oil/Gas |
| ____ b. Anti-trust/Trade Regulation | ____ k. Environmental | ____ v. Patents |
| ____ c. Arbitration/Mediation | ____ l. Estate/Probate/Wills/Trusts | ____ Copyright/Trademark |
| 15 d. Bankruptcy | ____ m. ERISA/Employee Relations | ____ w. Public Utilities |
| ____ e. Civil Litigation–Plaintiffs* | ____ n. Financial Institutions* | ____ x. Real Estate* |
| ____ Civil Litigation–Defendants | ____ o. Gaming/Casino/Representation | ____ y. Securities Exempt/Bonds* |
| ____ f. Collection/Repossession | ____ p. Government | ____ Securities/Registered Offerings* |
| ____ g. Corporation /Business | ____ q. Immigration | ____ z. Social Security |
| Merger and Acquisition | ____ r. International Law | ____ aa. Taxation* |
| 5 h. Criminal | ____ s. Labor Law | 30 bb. Workers Compensation* |
| 10 i. Domestic Relations | ____ t. Natural Resources | 40 cc. Other – Describe _____ |

**100**   Total (should equal 100%)

* Provide Supplemental Application for firm if not previously submitted.

IAS 1

## Individual Attorney Supplement (continued for Ernest W. Cromartie )

*9. If you offer any of the four services below to the public, please show percentage of your total time devoted to the service and provide details of any professional liability insurance covering the service:

| | | | |
|---|---|---|---|
| Insurance Agent/Broker | 0 | Real Estate Agent/Broker | 0 |
| Accountant | 0 | Title Agent/Abstractor | 0 |

*10. If part of your law practice is devoted to any one of the following, please show percentage of your total time devoted to the service and provide details of any professional liability insurance covering the service and provide copy of employment contract, if remuneration inures to you rather than to the firm:

| | | | |
|---|---|---|---|
| Prosecutor | 0 | Municipal, State, or Corporate Counsel | 0 |
| Public Defender | 0 | | |

11. Social Security Number:   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

12. Date Admitted to Bar   11/15/1999

   a) List Bar Association(s) of which you are a member in good standing      SC

13. Previous employment since admission to Bar:

| Date | Employer/Position | State | Insurance Carrier |
|---|---|---|---|
| 08/01/1999 | US Dept of Treasury | DC | N/A |
| | | | |
| | | | |
| | | | |

*14. Are you a salaried employee of any organization other than the applicant firm?       Yes ☐  No ☒
   If yes, please explain

*15. Do you serve as director or officer, or do you exercise any fiduciary control over any business enterprise other than the applicant firm including profit and not for profit organizations?       Yes ☐  No ☒

a) Please list enterprise(s), nature of the business and position held on separate attachment.
      Also, note whether any "Directors and Officers" liability insurance is maintained.
b) Are any of these enterprises clients of the applicant firm?       Yes ☐  No ☒

*16. Do you perform any professional legal services for any other entity other than the Named Insured firm shown in item number one of the Firm Application?       Yes ☐  No ☒
   If yes, please provide the name of the other entity.

_Ernest W. Cromartie_      Date: _4 / 30 / 03_
Attorney's Signature

NOTE:  REFER TO POLICY EXCLUSIONS REGARDING THESE EXPOSURES.

IAS 2



**ALPS**
Attorneys Liability Protection Society
*A Risk Retention Group*

## Individual Attorney Supplement (Complete one per attorney)

Firm Name:  The Cromartie Law Firm, LLP

1. Individual Attorney Supplement for: Mr. ☐ Ms. ☒    Dinah C. Wiley

   E-mail:

2. Position With Firm: ☐ Partner ☒ Associate ☐ Of Counsel    0    # of billable hours per month  (estimate)

3. During the past 12 months, have you attended or participated in at least 3 hours of CLE seminars on Ethics, Risk Management, Loss Prevention and/or Office Management? Use of video tapes, such as offered by ABA, or attendance at seminars will qualify for a 10% rate credit.    ☐ Yes ☐ No

4. Since what date have you been insured on a continuous basis for professional liability?    06/01/1996

5. Date you joined this or predecessor firm:    06/05/2000

6. Starting date of private practice (not corporate or government):    06/05/2000

7. How many claims have been made against you during the past 5 years, regardless of whether indemnity was paid, or has an indemnity payment of greater than $20,000 been made by you, your firm or an insurance carrier in settlement of a Professional Liability claim against you. _____

   If so, state the dates and amount of indemnity and complete the Supplemental Claim form for each such claim.

| Date: | | Claimant: | Amount: $ |
|---|---|---|---|
| Date: | | Claimant: | Amount: $ |

8. Note the percentage of your professional time in private practice devoted to each area below.

| | | | | | |
|---|---|---|---|---|---|
| ____ | a. Admiralty/Maritime | ____ | j. Entertainment/Sports | ____ | u. Oil/Gas |
| ____ | b. Anti-trust/Trade Regulation | ____ | k. Environmental | ____ | v. Patents |
| ____ | c. Arbitration/Mediation | 33 | l. Estate/Probate/Wills/Trusts | ____ | Copyright/Trademark |
| 33 | d. Bankruptcy | ____ | m. ERISA/Employee Relations | ____ | w. Public Utilities |
| ____ | e. Civil Litigation–Plaintiffs* | ____ | n. Financial Institutions* | ____ | x. Real Estate* |
| ____ | Civil Litigation–Defendants | ____ | o. Gaming/Casino/Representation | ____ | y. Securities Exempt/Bonds* |
| ____ | f. Collection/Repossession | ____ | p. Government | ____ | Securities/Registered Offerings* |
| ____ | g. Corporation /Business | ____ | q. Immigration | ____ | z. Social Security |
| ____ | Merger and Acquisition | ____ | r. International Law | ____ | aa. Taxation* |
| ____ | h. Criminal | ____ | s. Labor Law | ____ | bb. Workers Compensation* |
| 34 | i. Domestic Relations | ____ | t. Natural Resources | ____ | cc. Other – Describe _____ |

100    Total (should equal 100%)

* Provide Supplemental Application for firm if not previously submitted.

**IAS 1**

**Individual Attorney Supplement (continued for Dinah C. Wiley )**

*9. If you offer any of the four services below to the public, please show percentage of your total time devoted to the service and provide details of any professional liability insurance covering the service:

Insurance Agent/Broker    0          Real Estate Agent/Broker    0
Accountant    0          Title Agent/Abstractor    0

*10. If part of your law practice is devoted to any one of the following, please show percentage of your total time devoted to the service and provide details of any professional liability insurance covering the service  and provide copy of employment contract, if remuneration inures to you rather than to the firm:

Prosecutor    0          Municipal, State, or Corporate Counsel    0
Public Defender    0

11. Social Security Number:    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

12. Date Admitted to Bar    06/04/1996
    a) List Bar Association(s) of which you are a member in good standing    SC, CO BAR

13. Previous employment since admission to Bar:

| Date | Employer/Position | State | Insurance Carrier |
|------|-------------------|-------|-------------------|
| 08/01/1996 | Barr Law Offices-associate | SC | Other |
| 08/01/1997 | Glenn Walters-Associate | SC | Other |
| 06/05/2000 | Cromartie Law Firm | SC | ALPS |
|  |  |  |  |

*14. Are you a salaried employee of any organization other than the applicant firm?    Yes ☐  No ☒
    If yes, please explain

*15. Do you serve as director or officer, or do you exercise any fiduciary control over any business enterprise other than the applicant firm including profit and not for profit organizations?    Yes ☐  No ☒

a) Please list enterprise(s), nature of the business and position held on separate attachment.
            Also, note whether any "Directors and Officers" liability insurance is maintained.
b) Are any of these enterprises clients of the applicant firm?    Yes ☐  No ☒

*16. Do you perform any professional legal services for any other entity other than the Named Insured firm shown in item number one of the Firm Application?    Yes ☐  No ☒
    If yes, please provide the name of the other entity.

_____    Date:  4/30/03
Attorney's Signature

NOTE:  REFER TO POLICY EXCLUSIONS REGARDING THESE EXPOSURES.

IAS 2



**ALPS**
Attorneys Liability Protection Society
*A Risk Retention Group*

## CIVIL LITIGATION – PLAINTIFF SUPPLEMENT
(If more than one attorney practices in this area, one supplement will suffice.)

NAME OF APPLICANT FIRM:  The Cromartie Law Firm, LLP

Civil Litigation - Plaintiff includes the representation of a party in a civil action as plaintiff to recover damages arising from a tort-type injury such as bodily injury, personal injury, wrongful death or property damage.  This area of practice also includes tort-type actions such as libel and slander actions, legal and medical malpractice and product liability suits in which any form of personal injury or property damage is involved.

Which attorneys in the firm handle litigation?

What is their experience, i.e., number of cases handled and years as a litigator?

What is the average caseload per attorney on an annual basis?

What percentage of matters are settled before trial, or resolved by motion?

Does your firm generally assign more than one attorney to actively participate in the litigation of a case?  If yes, what percentage of cases has two or more attorneys actively participating in litigation?

Does your firm have a policy of providing the client with copies of all pleadings and correspondence sent or received by the firm during the course of handling the litigation?

Prior to agreeing upon settlement terms, does your firm obtain written authority or confirmation from the client as to the terms and conditions upon which the case will be settled, including any monetary or other consideration to be paid or received by the client?

What percentage of cases is handled on a contingency fee basis?

Describe types and general value of cases handled.

If you employ or engage an investigator in respect to your litigation practice, please explain.

I understand information submitted herein becomes a part of my Professional Liability Application and is subject to the same terms and conditions.

Applicant Signature _____    Title __**MANAGER**__    Date _4/31/203_



**ALPS**
Attorneys Liability Protection Society
*A Risk Retention Group*

## CIVIL LITIGATION – PLAINTIFF SUPPLEMENT
(If more than one attorney practices in this area, one supplement will suffice.)

NAME OF APPLICANT FIRM: The Cromartie Law Firm, LLP

Civil Litigation - Plaintiff includes the representation of a party in a civil action as plaintiff to recover damages arising from a tort-type injury such as bodily injury, personal injury, wrongful death or property damage. This area of practice also includes tort-type actions such as libel and slander actions, legal and medical malpractice and product liability suits in which any form of personal injury or property damage is involved.

Which attorneys in the firm handle litigation?    **E. W. CROMARTIE, II**

What is their experience, i.e., number of cases handled and years as a litigator?

**25 + YEARS, 75 CASES PER YEAR**

What is the average caseload per attorney on an annual basis?

**75        CASES**

What percentage of matters are settled before trial, or resolved by motion?

**90%**

Does your firm generally assign more than one attorney to actively participate in the litigation of a case? If yes, what percentage of cases has two or more attorneys actively participating in litigation?

**YES, 50%**

Does your firm have a policy of providing the client with copies of all pleadings and correspondence sent or received by the firm during the course of handling the litigation?

**YES**

Prior to agreeing upon settlement terms, does your firm obtain written authority or confirmation from the client as to the terms and conditions upon which the case will be settled, including any monetary or other consideration to be paid or received by the client?

**YES**

What percentage of cases is handled on a contingency fee basis?

**50 %**

Describe types and general value of cases handled.

**5,000-100,000  AUTOMOBILE ACCIDENTS AND WORKER'S COMPENSATION**

If you employ or engage an investigator in respect to your litigation practice, please explain.

**YES, PRIVATE INVESTIGATOR ON DEFENSE MATTERS AND CLAIMANT MATTERS.**

I understand information submitted herein becomes a part of my Professional Liability Application and is subject to the same terms and conditions.

Applicant Signature _____    Title __ **MANAGER** __    Date _4/3·/2·/2_



**ALPS**
Attorneys Liability Protection Society
*A Risk Retention Group*

## REAL ESTATE SUPPLEMENT
(If more than one attorney practices in this area, one supplement will suffice.)

NAME OF APPLICANT FIRM:    The Cromartie Law Firm, LLP
                                       (Please Print)

Does the firm undertake any aspect of the financial or valuation analysis of transactions?  If so, please describe.

      **NO**

Does the firm undertake responsibility for preparing or reviewing closing documents and closing calculations, e.g., preparing settlement statements or determining prorations?    **YES**

If so, does your firm utilize computer software to assist in the preparation and completion of buyer's and seller's settlement statements?    **YES**

If not, who does such preparations and what responsibility does the firm take for their accuracy?  How do you communicate that responsibility to the client?

      **N/A**

To what extent does the firm undertake examination of titles, legal descriptions or survey matters?

      **HAVE TITLE COMPANY EXAMINE TITLE.**

Does the firm prepare loan documents on behalf of a lender in conjunction with real estate transactions?

      **YES**

Describe how the firm addresses issues created by environmental problems and conditions for clients and whether it expressly declines to offer advice on such matters.

      **USE OUTSIDE EXPERT CONSULTING FIRM**

Are all land use and subdivision permits required to be "of record" in your jurisdiction to be valid?  If not, how do you certify title in a way that protects your firm from liability?  Please cite appropriate judicial or other authority upon which you rely.

      **ALL ARE REQUIRED TO BE OF RECORD.**

Does your firm represent more than one party in any real estate transaction (If so, cite the judicial or other authority upon which you rely)?    **NO, WE REPRESENT ONE PARTY ONLY.**

I understand information submitted herein becomes a part of my Professional Liability Application and is subject to the same terms and conditions.

Applicant Signature _____    Title **MANAGER**    Date 4/30/2004

**ALPS**
Attorneys Liability Protection Society
*A Risk Retention Group*

## SUPPLEMENTAL CLAIMS INFORMATION

1. Complete one form for each claim or incident.
2. If claim is still open, attach copy of complaint and responsive pleadings.

Claim Information

1. Full Name of Applicant Firm:     The Cromartie Law Firm, LLP

2. Full Name of individual(s)     **N/A**
   of firm involved in the claim:

3. Full Name of Claimant:

4. Is this a Claim/Suit ☐ or Incident ☐ 4a. Have you notified your insurance carrier in writing? Yes ☐ No ☐

5. Date of Alleged Error:                          5a. Date of Claim:

6. Name of Insurance Company Handling:

7. Additional defendants:

8. If closed:  Date Claim was paid and closed:

   Total Loss Paid Including Deductible:     $                    Court Judgment         Out of Court Settlement

9. If pending:  Claimant's Settlement Demand:     $                 Defendant's Offer For Settlement  $

10. Description of claim:  (Provide enough information to allow evaluation)

   a.  Alleged act, error or omission upon which Claimant bases claim:

   b.  Description of case and events:

   c.  Description of type and extent of injury or damage allegedly sustained:

11.  What steps have the firm and the attorney taken to prevent similar allegations in the future?

I understand information submitted herein becomes a part of my Professional Liability Application and is subject to the same terms and conditions.

Applicant Signature:                          Title:   **MANAGER**          Date:   4/30/2004

# CROMARTIE LAW FIRM, L.L.P.
### ATTORNEYS AND COUNSELORS AT LAW

E.W. CROMARTIE, II
D. CHENISE WILEY, ESQ.
ERNEST W. CROMARTIE, III

*1607 Harden Street, Columbia, South Carolina 29204*

TELEPHONE 803-256-3462
TELECOPIER 803-765-2671

**REPLY TO:**

P.O. BOX 8417
COLUMBIA, SC 29202

Cromartie Law Firm, LLP
P O Box 8417
Phone: 803-256-3462
Fax: 803-765-2671

# facsimile transmittal

**To:**  Shawnda White         **From:**  Gloria Woodard

**Fax:**  406-728-7416         **Date:**  May 1, 2003

**Phone:**                     **Pages:**  2 including cover

**Re:**  Renewal application   **CC:**

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

**Notes:**



**ALPS**
Attorneys Liability Protection Society
*A Risk Retention Group*

# Facsimile

## T R A N S M I T T A L

To: The Cromartie Law Firm, LLP
Attn: Mr. Ernest W. Cromartie
Re: Professional Liability Insurance RENEWAL Quotation
Date: May 5, 2003
Fax: (803)765-2671
Pages:

Comments: Mr. Cromartie, Attached is the new quotation for Professional Liability from ALPS. You may consider this faxed application as the original for signature purposes. To issue the policy, we will need:
1.  Circle the Premium on page 4.
2.  Sign the Acceptance at the top of page 5.
3.  Sign the bottom of page 5 if you are Premium Financing.
Please note Preconditions to binding coverage. I will give you a call later to follow-up with any questions that you may have regarding the quote.

Thank you very much!

From the desk of...
**Shawnda White**
swhite@alpsnet.com
1-800-367-2577, ext. 278
Fax: (406) 728-7416
ALPS,111 N. Higgins, Ste 200
Missoula, MT 59801

CONFIDENTIALITY NOTICE

This message is intended only for the use of the individual or entity to which it is addressed and my contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this in error, please notify us immediately by telephone and return the original message to us at the above address via the US Postal Service.  Thank you.

## ADDITIONAL QUOTATION INFORMATION

**Prior Acts Limitation:** Your Firm's Loss Inclusion (Prior Acts) Date will be 05/01/2000. This is the date since which your firm or its predecessor firm has maintained continuous claims made professional liability coverage. Your ALPS policy will not cover any claim based upon an act that occurred prior to this date. The Loss Inclusion Date is taken from questions 8 & 9 of your Firm Application.

**Maturing Rating:** ALPS rates attorneys on an individual basis. In the event any attorney in the Firm has less than 6 years prior acts coverage, the premium has been discounted to reflect a reduced exposure to the attorney and ALPS. As this exposure matures the premium may increase correspondingly, a practice common throughout the industry.

In consideration of your qualifying CLE participation, we have applied a 10% CREDIT to your premium.

This policy form includes coverage for activities as a TITLE AGENT. This coverage is at no additional charge and is a benefit to all ALPS insureds. Please see Insuring Agreement 1.1.5.

Please note EXCLUSION 2.1.6 of Attorneys Professional Liability Policy. Because of a position held or interest in an other than insured organization, this exclusion MAY apply to you.

## PRECONDITIONS TO BINDING COVERAGE AND ISSUING POLICY:

Appropriate payment must accompany Acceptance page prior to policy issuance.

Receipt of signed ACCEPTANCE pages.

Please submit a copy of the firm's current LETTERHEAD.

This quotation excludes Optional Coverage Extension. The retroactive coverage applies to each attorney as follows:

| Name | Retroactive Coverage Date |
|------|---------------------------|
| Cromartie, E. W. | 05/01/2000 |
| Wiley, Dinah | 06/05/2000 |
| Cromartie, Ernest | 04/29/2002 |

**Name Insured:** The Cromartie Law Firm, LLP

**Effective Date of Coverage:** 05/01/2002

**Firm Loss Inclusion (Prior Acts) Date:** 05/01/2000

**Note:**

| Limits Per Claim | Aggregate | Deductible | PLP002a (07/01/2001) Defender option | |
|---|---|---|---|---|
| | | | Premium | Premium With FDD |
| $500000 | $1000000 | $1000 | $5633 | $5777 |
| $500000 | $1000000 | $2500 | $5488 | $5633 |
| $500000 | $1000000 | $5000 | $5308 | $5560 |
| $1000000 | $1000000 | $1000 | $6173 | $6317 |
| $1000000 | $1000000 | $2500 | $6029 | $6173 |
| $1000000 | $1000000 | $5000 | $5849 | $6101 |
| $1000000 | $2000000 | $1000 | $6354 | $6498 |
| $1000000 | $2000000 | $2500 | $6209 | $6354 |
| $1000000 | $2000000 | $5000 | $6029 | $6281 |

**First Dollar Defense (FDD):** eliminates the application of your deductible in a defended claim unless and until there is a loss payment, i.e., settlement or indemnity.

**Defense Cost on the OUTSIDE of the policy limits:** Defense Cost is IN ADDITION to your limit of liability up to 50% of the per claim limit or $500,000, whichever is less.

**Aggregate Deductible:** the deductible is applied to each claim, subject to an annual aggregate amount of twice the stated deductible.

**Enhanced Defender Policy (EDP):** ALPS now offers Attorneys Professional Liability Plan W/Enhanced Defender Options (PLP002a). For a description of the enhancements, please see the ENHANCED COVERAGE OPTION document attached to this quotation.

*This Quotation Is Valid For 60 Days From The Date Of Issue Or
60 Days From Proposed Effective Date, Whichever Comes First.*

Page 3

# ACCEPTANCE QUOTATIONS PAGE

## ATTORNEYS LIABILITY PROTECTION SOCIETY
### A Risk Retention Group

*Please circle the premium which represents your choice of coverage.*

| Limits Per Claim | Aggregate | Deductible | PLP002a (07/01/2001) Defender option | |
|---|---|---|---|---|
| | | | Premium | Premium With FDD |
| $500000 | $1000000 | $1000 | $5633 | $5777 |
| $500000 | $1000000 | $2500 | $5488 | $5633 |
| $500000 | $1000000 | $5000 | $5308 | $5560 |
| $1000000 | $1000000 | $1000 | $6173 | $6317 |
| $1000000 | $1000000 | $2500 | $6029 | $6173 |
| $1000000 | $1000000 | $5000 | $5849 | $6101 |
| $1000000 | $2000000 | $1000 | $6354 | $6498 |
| $1000000 | $2000000 | $2500 | $6209 | $6354 |
| $1000000 | $2000000 | $5000 | $6029 | $6281 |

*Please return the **ACCEPTANCE QUOTATIONS PAGE** with your **circled** choice and the **ACCEPTANCE PAGE** along with payment to ALPS @ PO Box 9169 Missoula, MT 59807-9169*

Reference Number 302224

# ACCEPTANCE PAGE

WARRANTY

If you are aware of any legal work or incidents that might give rise to a claim, contact us immediately. Your signature below warrants that the information is true and correct as of the date of your signature. You agree to report to ALPS any future material change in your practice.

The undersigned understands and acknowledges that ALPS, pursuant to any policy issued to the applicant, shall have no obligation to either defend or pay on behalf of the firm in respect to any claim or claims arising out of professional services rendered prior to the Loss Inclusion Date 05/01/2000.

The undersigned further understands, acknowledges and accepts the following enhancement or exclusionary, modifying, or limiting endorsement (s), copies of which are contained in policy form number PLP001a (07/01/2001) or PLP002a (07/01/2001) or attached to the quotation:

First Dollar Defense Option

By: _____     Date:_____

      The Cromartie Law Firm, LLP

---

## CREDIT CARD PAYMENT

We accept **VISA** or **MasterCard** for credit card payments.          Billing Address  (Please Print)

Credit Card Number: _____     Expiration Date: _____     _____

Name as it appears on the card: _____     _____

Signature: _____     _____

If you pay via credit card, you may fax the ACCEPTANCE QUOTATIONS PAGE with your **circled** choice and the
ACCEPTANCE PAGE to (406) 728-7416.

---

## PREMIUM FINANCE OPTION

If you choose to finance your premium, sign below and return with the 25% down payment.

**Premium Schedule Option:** Premium financing is available at 11%.  A down payment of 25% is required on all accounts that are financed.  The balance of the premium will be billed on a monthly basis.**

By: _____

      The Cromartie Law Firm, LLP

**Premiums in excess of $1,000 may be financed over a 9-month period.  Premiums below $1,000 may be financed over a 3-month period.

---

*Please return the **ACCEPTANCE QUOTATIONS PAGE** with your **circled** choice and **this
page** along with payment to ALPS @ PO Box 9169 Missoula, MT 59807-9169*
Reference Number 302224

Endorsement Summaries

## FIRST DOLLAR DEFENSE OPTION

In consideration of an additional premium, the Deductible Clause in Condition 3.2.4 of the Policy is amended to read as follows:

DEDUCTIBLE: The **deductible** shall be subtracted from the total amount of **damages** resulting from each **claim** reported to the Company during the **policy period**, subject to a maximum annual aggregate **deductible** equal to twice the **deductible** amount listed in the Declarations.

## ENHANCED COVERAGE OPTION

Attorneys Liability Protection Society is pleased to offer an enhanced coverage option known as The ATTORNEYS PROFESSIONAL LIABILITY PROTECTION PLAN WITH ENHANCED DEFENDER OPTIONS. This program includes a number of new features or enhancements not included in our standard form. The Defender Option features:

- No exclusion of professional services performed for employees or family members applies if legal services are provided in the ordinary course of the insured's daily business activity.

- The claim expense allowance of 50% per claim limit has been increased to a maximum of $1,000,000.

- If a claim is resolved through the use of formal mediation or if at the company's request the Insured agrees to binding arbitration, your deductible will reduced by 50%, to a maximum reduction of $12,500.

- The Company will pay up to $500, with a maximum of $5,000 per policy period, for loss of earnings for each attorney listed in the policy for each day or part of the day for their attendance at a trial, hearing, or arbitration proceedings arising from a claim.

- The Company will pay up to $2,500 per policy for each lawyer named on the policy for attorneys fees and other costs, expenses or fees resulting from the investigation or defense of a proceeding before the state licensing board, peer review committee or governmental regulatory body. The policy deductible does not apply to this coverage feature.

All these enhancements are being offered for only $75 per attorney. Please contact your Customer Service Team to learn if your firm qualifies for this premier coverage package.

# TABLE OF ANNUAL PREMIUM QUOTATIONS
### ATTORNEYS LIABILITY PROTECTION SOCIETY
#### A Risk Retention Group

Named Insured:                              The Cromartie Law Firm, LLP
Effective Date of Coverage:             05/01/2003
Firm Loss Inclusion (Prior Acts) Date:   05/01/2000

| Limits Per Claim | Aggregate | Deductible | PLP002a (07/01/2001) Defender option | |
|---|---|---|---|---|
| | | | Premium | Premium With FDD |
| $1,000,000 | $1,000,000 | $1,000 | $6,874 | $7,036 |
| $1,000,000 | $1,000,000 | $2,500 | $6,713 | $6,874 |
| $1,000,000 | $1,000,000 | $5,000 | $6,512 | $6,794 |
| $1,000,000 | $1,000,000 | $10,000 | $6,149 | $6,592 |
| $1,000,000 | $2,000,000 | $2,500 | $6,915 | $7,076 |
| $1,000,000 | $2,000,000 | $5,000 | $6,713 | $6,995 |
| $1,000,000 | $2,000,000 | $10,000 | $6,351 | $6,794 |
| $2,000,000 | $2,000,000 | $2,500 | $7,519 | $7,681 |
| $2,000,000 | $2,000,000 | $5,000 | $7,318 | $7,600 |
| $2,000,000 | $2,000,000 | $10,000 | $6,955 | $7,398 |

First Dollar Defense (FDD): eliminates the application of your deductible in a defended claim unless and until there is a loss payment, i.e., settlement or indemnity.

Defense Cost on the OUTSIDE of the policy limits: Defense Cost is IN ADDITION to your limit of liability up to 50% of the per claim limit or $500,000, whichever is less.

Aggregate Deductible: the deductible is applied to each claim, subject to an annual aggregate amount of twice the stated deductible.

Enhanced Defender Policy (EDP): ALPS offers Attorneys Professional Liability Plan W/Enhanced Defender Options (PLP002a). For a description of the enhancements, please see the ENHANCED COVERAGE OPTION document attached to this quotation.

Optional Coverage Extension: At your request, ALPS may endorse your policy to cover the prior acts of attorneys who have transferred to your firm from another law firm. Optional Coverage Extension covers their acts prior to joining your firm, subject to the Loss Inclusion Date(Prior Acts). Please indicate on the acceptance page of this quotation if you would like to receive a premium quote for this extension of coverage.

**This Quotation Is Valid Until May 30, 2003.**

Page 1

This quotation excludes Optional Coverage Extension. The retroactive coverage applies to each attorney as follows:

| Name | Retroactive Coverage Date |
|------|---------------------------|
| Cromartie II, E. W. | 05/01/2000 |
| Cromartie III, Ernest W. | 04/29/2002 |
| Wiley, Dinah C. | 06/05/2000 |

## ADDITIONAL QUOTATION INFORMATION

Prior Acts Limitation: Your Firm's Loss Inclusion (Prior Acts) Date will be 05/01/2000. This is the date since which your firm or its predecessor firm has maintained continuous claims made professional liability coverage. Your ALPS policy will not cover any claim based upon an act that occurred prior to this date. The Loss Inclusion Date is taken from questions 8 & 9 of your Firm Application.

Maturing Rating: ALPS rates attorneys on an individual basis. In the event any attorney in the Firm has less than 6 years prior acts coverage, the premium has been discounted to reflect a reduced exposure to the attorney and ALPS. As this exposure matures the premium may increase correspondingly, a practice common throughout the industry.

In consideration of your qualifying CLE participation, we have applied a 10% CREDIT to your premium.

This policy form includes coverage for activities as a TITLE AGENT. This coverage is at no additional charge and is a benefit to all ALPS insureds. Please see Insuring Agreement 1.1.5.

Please note EXCLUSION 2.1.6 of Attorneys Professional Liability Policy. Because of a position held or interest in an other than insured organization, this exclusion MAY apply to you.

## PRECONDITIONS TO BINDING COVERAGE AND ISSUING POLICY:

Appropriate payment must accompany Acceptance page prior to policy issuance.

Receipt of signed ACCEPTANCE pages.

# ENDORSEMENT SUMMARIES

## FIRST DOLLAR DEFENSE OPTION

In consideration of an additional premium, the Deductible Clause in Condition 3.2.4 of the Policy is amended to read as follows:

DEDUCTIBLE: The deductible shall be subtracted from the total amount of damages resulting from each claim reported to the Company during the policy period, subject to a maximum annual aggregate deductible equal to twice the deductible amount listed in the Declarations.

## ACCEPTANCE QUOTATIONS PAGE
ATTORNEYS LIABILITY PROTECTION SOCIETY
A Risk Retention Group

**Firm Name:** The Cromartie Law Firm, LLP

**Please circle the premium which represents your choice of coverage.**

| Limits Per Claim | Aggregate | Deductible | PLP002a (07/01/2001) Defender option | |
|---|---|---|---|---|
| | | | Premium | Premium With FDD |
| $1,000,000 | $1,000,000 | $1,000 | $6,874 | $7,036 |
| $1,000,000 | $1,000,000 | $2,500 | $6,713 | $6,874 |
| $1,000,000 | $1,000,000 | $5,000 | $6,512 | $6,794 |
| $1,000,000 | $1,000,000 | $10,000 | $6,149 | $6,592 |
| $1,000,000 | $2,000,000 | $2,500 | $6,915 | $7,076 |
| $1,000,000 | $2,000,000 | $5,000 | $6,713 | $6,995 |
| $1,000,000 | $2,000,000 | $10,000 | $6,351 | $6,794 |
| $2,000,000 | $2,000,000 | $2,500 | $7,519 | $7,681 |
| $2,000,000 | $2,000,000 | $5,000 | $7,318 | $7,600 |
| $2,000,000 | $2,000,000 | $10,000 | $6,955 | $7,398 |

*Please return the **ACCEPTANCE QUOTATIONS PAGE** with your **circled** choice and the*
***ACCEPTANCE PAGE** along with payment to ALPS @ PO Box 9169 Missoula, MT 59807-9169*

Reference Number 309277

**Page 4**

## ACCEPTANCE PAGE

WARRANTY

If you are aware of any legal work or incidents that might give rise to a claim, contact us immediately. Your signature below warrants that the information is true and correct as of the date of your signature. You agree to report to ALPS any future material change in your practice.

The undersigned understands and acknowledges that ALPS, pursuant to any policy issued to the applicant, shall have no obligation to either defend or pay on behalf of the firm in respect to any claim or claims arising out of professional services rendered prior to the Loss Inclusion Date 05/01/2000.

The undersigned further understands, acknowledges and accepts the following enhancement or exclusionary, modifying, or limiting endorsement (s), copies of which are contained in policy form number PLP001a (07/01/2001) or PLP002a (07/01/2001) or attached to the quotation:

First Dollar Defense Option

By: _____      Date:_____

    **The Cromartie Law Firm, LLP**

Optional Coverage Extension: At your request, ALPS may endorse your policy to cover the prior acts of attorneys who have transferred to your firm from another law firm, to cover their acts prior to joining your firm, subject to the Loss Inclusion Date. This may result in a higher premium charge if the change affects any of your current staff. Initial below if you want a revised quote including this extended coverage.

_____Initial here for Optional Coverage Extension Quote.

| CREDIT CARD PAYMENT | Payment Amount: $ _____ |
|---|---|

We accept VISA, MasterCard or Discover for credit card payments.      Billing Address  (Please Print)

Credit Card Number: _____      Expiration Date: _____      _____

Name as it appears on the card: _____      _____

Signature: _____      _____

If you pay via credit card, you may fax the ACCEPTANCE QUOTATIONS PAGE with your circled choice and the ACCEPTANCE PAGE to (406) 728-7416.

### PREMIUM FINANCE OPTION

If you choose to finance your premium, sign below and return with the 25% down payment.

Premium Schedule Option:  Premium financing is available at 11%.  A down payment of 25% is required on all accounts that are financed.  The balance of the premium will be billed on a monthly basis. **

By: _____

    The Cromartie Law Firm, LLP

**Premiums in excess of $1,000 may be financed over a 9-month period.  Premiums below $1,000 may be financed over a 3-month period.

Please return the ACCEPTANCE QUOTATIONS PAGE with your circled choice and this
page along with payment to ALPS @ PO Box 9169 Missoula, MT 59807-9169
Reference Number 309277

**Page 5**

May 5, 2003


The Cromartie Law Firm, LLP
Mr. Ernest W. Cromartie
1607 Harden Street
Columbia, SC 29202

Dear Mr. Cromartie:

Attorneys Liability Protection Society is pleased to offer **The Cromartie Law Firm, LLP** the following professional liability insurance renewal quotation. Your business is very important to us and we look forward to providing your firm with continuous protection and the best possible service.

Recognizing your renewal premium has increased this year, the following is offered to help explain where the increases came from:

- Regrettably, most insurance premiums for firms have increased this year due to the ongoing market conditions. Reinsurance rates, costs to defend/settle claims and frequency of claims have all increased recently. Simply put, the Lawyers Professional Liability marketplace is in a state of flux. We are seeing significant increases in premium from all responsible insurance companies. Financial strengths are being tested and sometimes downgraded, capacity is being restricted and coverage options curbed. Some insurance companies are leaving the marketplace entirely. ALPS intends to remain a reliable source for attorneys professional liability insurance with financially responsible rates.
- The enclosed quotation illustrates a range of limits. We ask that you carefully select the limit of liability for your firm. The prior years' limits may no longer be adequate considering the increase in the number of professional liability claims and higher judgments. We encourage every firm to consider increasing the per claim/aggregate limits, for further peace of mind.
- Our quote includes various deductibles, as well as the **First Dollar Defense Option (FDD)**. While our experience indicates over 60% of filed claims lack a legal or factual basis, defense costs can be incurred in any claim whether factual based or not. With the FDD option, the firm's deductible will not be applied.

Recognizing the overwhelming risks challenging you and your firm on a daily basis and despite preventative measures you may take, professional liability insurance is essential for the future and longevity of your firm. Attorneys Liability Protection Society (ALPS), owned and directed by attorneys, offers the best policies backed by the most superior customer service in the industry.

May 5, 2003
**The Cromartie Law Firm, LLP**


Page Two


- We are constantly developing new products and services tailored in response to the needs of our attorneys.
- We serve our clients through a team atmosphere, allowing you access to many dedicated experts in the professional liability insurance arena. Our combination of committed attorneys and insurance professionals are always ready to serve your needs.
- We offer financial strength and security. One of the crucial industry measurers of financial strength for an insurance company is its industry ratings. ALPS is currently rated A (excellent) with AM Best.
- Our claims specialists are available 24 hours a day with courteous, expedient assistance.

Thank you again for the opportunity to provide this renewal quotation.   We look forward to assisting you in expediting continued placement of your professional liability insurance coverage.

> *Providing continuous competitive, flexible and accessible coverage*
> *– the ALPS difference –*

Sincerely,



Shawnda White
ALPS Marketing



# T R A N S M I T T A L

| Date and Time: | Thursday, May 08, 2003 5:09 PM |
| --- | --- |
| To: | Shawndra White |
| Company: | ALPS |
| Fax No.: | 406.728.3113 |
| From: | E. W. Cromartie, II |
| Company: | Cromartie Law Firm, LLP |
| Phone No.: | 803-256-3462 |
| Fax No.: | 803-765-2671 |
| No. of Pages: | 5 ✗ , including cover |

Message:

Originals are being sent by FEDEX today.  Please call when received.  Thank you.

Gloria Woodard

# ACCEPTANCE PAGES & PRECONDITIONS

## ACCEPTANCE QUOTATIONS PAGE
### ATTORNEYS LIABILITY PROTECTION SOCIETY
#### A Risk Retention Group

**Firm Name:** The Cromartie Law Firm, LLP

Please circle the premium which represents your choice of coverage.

| Limits Per Claim | Aggregate | Deductible | PLP002a (07/01/2001) Defender option | |
|---|---|---|---|---|
| | | | Premium | Premium With FDD |
| $1,000,000 | $1,000,000 | $1,000 | $6,874 | $7,036 |
| $1,000,000 | $1,000,000 | $2,500 | $6,713 | $6,874 |
| $1,000,000 | $1,000,000 | $5,000 | $6,512 | $6,794 |
| $1,000,000 | $1,000,000 | $10,000 | $6,149 | $6,592 |
| $1,000,000 | $2,000,000 | $2,500 | $6,915 | $7,076 |
| $1,000,000 | $2,000,000 | $5,000 | $6,713 | $6,995 |
| $1,000,000 | $2,000,000 | $10,000 | $6,351 | $6,794 |
| $2,000,000 | $2,000,000 | $2,500 | $7,519 | $7,681 |
| $2,000,000 | $2,000,000 | $5,000 | $7,318 | $7,600 |
| $2,000,000 | $2,000,000 | $10,000 | $6,955 | $7,398 |



*Please return the ACCEPTANCE QUOTATIONS PAGE with your circled choice and the ACCEPTANCE PAGE along with payment to ALPS @ PO Box 9169 Missoula, MT 59807-9169*

Reference Number 309277

Page 4

## ACCEPTANCE PAGE

**WARRANTY**
If you are aware of any legal work or incidents that might give rise to a claim, contact us immediately. Your signature below warrants that the information is true and correct as of the date of your signature. You agree to report to ALPS any future material change in your practice.

The undersigned understands and acknowledges that ALPS, pursuant to any policy issued to the applicant, shall have no obligation to either defend or pay on behalf of the firm in respect to any claim or claims arising out of professional services rendered prior to the Loss Inclusion Date 05/01/2000.

The undersigned further understands, acknowledges and accepts the following enhancement or exclusionary, modifying, or limiting endorsement (s), copies of which are contained in policy form number PLP001a (07/01/2001) or PLP002x (07/01/2001) or attached to the quotation:

First Dollar Defense Option _____

By: _____          Date: 5/8/2003
   The Cromartie Law Firm, LLP

Optional Coverage Extension: At your request, ALPS may endorse your policy to cover the prior acts of attorneys who have transferred to your firm from another law firm, to cover their acts prior to joining your firm, subject to the Loss Inclusion Date. This may result in a higher premium charge if the change affects any of your current staff. Initial below if you want a revised quote including this extended coverage.

_____ Initial here for Optional Coverage Extension Quote.

| CREDIT CARD PAYMENT | Payment Amount: $ _____ |
|---|---|
| We accept VISA, MasterCard or Discover for credit card payments. | Billing Address (Please Print) |

Credit Card Number: _____    Expiration Date: _____    _____
Name as it appears on the card: _____    _____
Signature: _____

If you pay via credit card, you may fax the ACCEPTANCE QUOTATIONS PAGE with your circled choice and the ACCEPTANCE PAGE to (406) 728-7416.

### PREMIUM FINANCE OPTION

If you choose to finance your premium, sign below and return with the 25% down payment.
Premium Schedule Option: Premium financing is available at 11%. A down payment of 25% is required on all accounts that are financed. The balance of the premium will be billed on a monthly basis.**

By: _____
   The Cromartie Law Firm, LLP

**Premiums in excess of $1,000 may be financed over a 9-month period. Premiums below $1,000 may be financed over a 3-month period.

Please return the ACCEPTANCE QUOTATIONS PAGE with your circled choice and this
page along with payment to ALPS @ PO Box 9169 Missoula, MT 59807-9169
Reference Number 309277

Page 5

EX. F

## POLICY RENEWAL ENDORSEMENT - DECLARATIONS FOR POLICY NO. ALPS5192- 3

Item 1 – Named Insured:       The Cromartie Law Firm, LLP
    Address:              1607 Harden Street
                          P. O. Box 8417
                          Columbia, SC 29202

Item 2 – Name of Each Insured Attorney:                          Retroactive Date
                    Cromartie II, E. W.                      05/01/2000
                    Cromartie III, Ernest W.                 04/29/2002
                    Wiley, Dinah C.                          06/05/2000

Item 3 – Policy Period:

                    Effective Date:                          05/01/2003
                    Expiration Date:                         05/01/2004
                    Loss Inclusion Date:                     05/01/2000

Item 4 – Limit of Liability:     $ 1,000,000        *Each Claim
                          $ 1,000,000         Aggregate
                          *This means "all claims arising out of the same, related or continuing professional services".

Item 5 – Deductible:             $ 1,000

Item 6 – Annual Premium:         $ 7,036

Item 7 – Terrorism Coverage Disclosure: In compliance with the Terrorism Risk Insurance Act of 2002, ALPS must disclose to you that no portion of your annual premium is attributable to coverage for acts of terrorism.

Item 8 – Riders attached at inception of the policy Attorneys Professional Liability Protections Plan PLP002a(07/01/2001):
    First Dollar Defense Option

NOTICE: This is a Claims Made policy. Except to such extent as may otherwise be provided herein, the coverage of this policy is limited generally to liability for only those claims that are first made against the Insured and reported to the company while this policy is in force. Please review the policy carefully and discuss the coverage there under with your insurance advisor.

This policy is issued by your Risk Retention Group. Your Risk Retention Group may not be subject to all of the insurance laws and regulations of your state. State insurance insolvency guaranty funds are not available for your Risk Retention Group.

This renewal endorsement, including all endorsements listed herein, is incorporated in and made a part of the policy to which it applies. It entirely replaces any Declarations page previously issued in connection with any earlier policy year. All initial application forms and all renewal application forms submitted to the Company are made a part of these Declarations and of the policy.

Countersigned by: _____        Date: May 09, 2003
                      Authorized Representative

                                              ALPSDECREN(02/2003)

**ALPS**

Attorneys Liability Protection Society
*A Risk Retention Group*

P.O. Box 9169, Missoula, MT 59807-9169
(800) 367-2577 • (406) 728-3113 • Fax (406) 728-7416
Web Site: www.alpsnet.com

Policy No.:      **ALPS5192- 3**
Named Insured:   The Cromartie Law Firm, LLP
Effective Date:  05/01/2003

### FIRST DOLLAR DEFENSE OPTION

In consideration of an additional premium, the Deductible Clause in Condition 3.2.4 of the Policy is amended to read as follows:

DEDUCTIBLE: The deductible shall be subtracted from the total amount of damages resulting from each claim reported to the Company during the policy period, subject to a maximum annual aggregate deductible equal to twice the deductible amount listed in the Declarations.

All other terms and conditions remain unchanged.

Unless another effective date is shown below, this endorsement forms a part of the policy at inception, no countersignature is required.

END.FDD2(1/10/1997)

Attorneys Liability Protection Society, Inc.
A Risk Retention Group
Professional Liability Policy.

111 N. Higgins, Suite 200
P. O. Box 9169
Missoula, MT  59807-9169
1-406-728-3113
Claims Reports 1-800-367-4366

PLP002a (07/01/2001)

# ATTORNEYS PROFESSIONAL LIABILITY PROTECTION PLAN WITH ENHANCED DEFENDER OPTIONS
## NOTICE

THIS IS A CLAIMS MADE FORM. EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS ARISING AFTER THE LOSS INCLUSION DATE (AS SET FORTH ON THE DECLARATION PAGE OF THIS POLICY) THAT ARE FIRST MADE AGAINST AN INSURED AND REPORTED TO THE COMPANY WHILE THE POLICY IS IN FORCE. PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH ALPS.

THIS POLICY PROVIDES A CLAIM EXPENSE ALLOWANCE. AFTER THE CLAIM EXPENSE ALLOWANCE HAS BEEN EXHAUSTED, THE PAYMENT OF ADDITIONAL CLAIM EXPENSES WILL BE MADE FROM THE LIMIT OF LIABILITY AND WILL THEREBY REDUCE THE AMOUNT AVAILABLE UNDER THE LIMIT OF LIABILITY TO PAY DAMAGES.

THIS POLICY IS ISSUED BY YOUR RISK RETENTION GROUP. YOUR RISK RETENTION GROUP MAY NOT BE SUBJECT TO ALL OF THE INSURANCE LAWS AND REGULATIONS OF YOUR STATE. STATE INSURANCE INSOLVENCY GUARANTY FUNDS ARE NOT AVAILABLE FOR YOUR RISK RETENTION GROUP.

# POLICY INDEX

**Please read your policy carefully as many items interrelate.**

DECLARATIONS .......................................................................................................1

1.     INSURING AGREEMENTS.........................................................................1
    1.1.   COVERAGE.........................................................................1
    1.2    DEFENSE AND SETTLEMENT, CONSENT TO SETTLE........................i
    1.3    CLAIM EXPENSE ALLOWANCE .................................................2
    1.4    INSURED .....................................................................2
    1.5    POLICY TERRITORY ...........................................................3

2.     EXCLUSIONS ........................................................................3

3.     CONDITIONS ........................................................................4
    3.1    DEFINITIONS ................................................................4
    3.2    LIMITS OF LIABILITY ......................................................5
    3.3    SUPPLEMENTARY PAYMENTS ...............................................6
    3.4    INNOCENT INSURED COVERAGE ...........................................6
    3.5    EXTENDED REPORTING ENDORSEMENT ....................................7
    3.6    OTHER INSURANCE .........................................................7
    3.7    NOTICE OF CLAIM OR SUIT..............................................7
    3.8    ASSISTANCE AND COOPERATION OF THE INSURED....................7
    3.9    ACTION AGAINST COMPANY ...............................................8
    3.10   SUBROGATION .............................................................8
    3.11   CHANGES...................................................................9
    3.12   ADDITIONS OR DELETIONS OF ATTORNEYS INSURED...........................9
    3.13   ASSIGNMENT ...............................................................9
    3.14   CANCELLATION OR NONRENEWAL .........................................9
    3.15   ENTIRE CONTRACT .......................................................9
    3.16   POLICY CONDITIONS: NONASSESSABLE POLICY ...................................9
    3.17   SPECIAL LAWS ...........................................................10
    3.18   LIBERALIZATION .........................................................10
    3.19   NOTICES...................................................................10

# Attorneys Liability Protection Society, Inc.

A Risk Retention Group

## Agreement of Insurance

Attorneys Liability Protection Society, Inc., a Risk Retention Group, an insurance company, domiciled in the State of Montana (herein called the Company) agrees with the Insured named in the Declarations made a part hereof, in consideration of the payment of the premium and in reliance on the application, to the following:

# 1.     INSURING AGREEMENTS

### 1.1     COVERAGE

1.1.1    Subject to the limits of liability, exclusions, conditions and other terms of this policy, the Company agrees to pay on behalf of the **Insured** all sums in excess of the **deductible** amount stated in the Declarations which the **Insured** shall become legally obligated to pay as **damages** resulting from CLAIMS MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY DURING THE **POLICY PERIOD**:

1.1.2    by reason of any act, error or omission in **professional services** rendered or that should have been rendered by the **Insured** or by any person for whose acts, errors or omission the **Insured** is legally responsible, while providing legal or notary services for others, including acts, errors or omissions as mediator, arbitrator, or other facilitator in a dispute resolution process, or as administrator, conservator, guardian, executor, personal representative or trustee, so long as the **Insured** is not receiving compensation other than fees for **professional services** directly from such estate or trust; or

1.1.3    because of **personal injury** and arising out of the **professional services** of the **Insured** as an attorney, mediator, arbitrator, or other facilitator in a dispute resolution process, administrator, conservator, guardian, executor, personal representative or trustee; so long as the **Insured** is not receiving compensation other than fees for **professional services** directly from such estate or trust or

1.1.4    by reason of any act, error, omission or **personal injury** committed by any non-lawyer employee of the **Named Insured** but solely if arising out of service rendered within the scope of such person's employment by the **Named Insured** and arising out of the **Insured's professional services.**

1.1.5    by reason of any act, error or omission or **personal injury** committed by the **Insured** arising out of the **Insured's** services as title insurance agent.

1.1.6    Provided that such act, error, omission or such **personal injury** happens on or subsequent to the **loss inclusion date** set forth in the Declarations.

### 1.2     DEFENSE AND SETTLEMENT, CONSENT TO SETTLE

1.2.1    For any **claim** covered by the policy under section 1.1, the Company shall have the right to appoint counsel after consultation with the **Insured**, when practicable, and shall have the duty to defend such **claim** even if any or all of the allegations of the **claim** are groundless, false or fraudulent. The Company may make such investigations, undertake settlement negotiations and make such settlements as it deems appropriate and expedient; provided however, that the Company shall consult with the **Insured** regarding any proposed settlement and if the Company and **Insured** cannot agree on the appropriateness of the settlement, the matter may be submitted to peer review in the following manner. If the decision to settle a **claim** is reached by the Company, and the **Insured** disagrees with the Company's decision, the **Insured** may appeal to peer review. Upon receipt of such an appeal, the President in his/her sole discretion shall determine if there is adequate time to conduct such a review taking into consideration court calendars, settlement demand deadline, discovery deadlines and the like. If peer review is to go forward the President shall empanel a committee composed of not less than three (3) members of the Board of Directors of the Company or other individuals. If time permits, the President may, in his sole discretion, consult with the **Insured** regarding the composition of the panel. Upon completion of the review, the committee shall promptly decide whether the proposed settlement is reasonable and

immediately advise the Company and the **Insured** of its decision. The decision of the peer review committee shall be final and binding on both the **Insured** and the Company.

    1.2.2    The Company shall not be obligated to pay any **damages** or **claim expenses,** or continue to undertake defense of any **claim** after the applicable **limit of liability** have been exhausted by payments of **damages** and/or **claim expenses,** or after an amount equal to the applicable limit of liability minus any **damages** and **claim expenses** previously paid on the **claim** is deposited with a court of competent jurisdiction to be disbursed by the court's order. In such a case, the Company shall have the right to withdraw from further defense thereof by tendering control of the defense to the **Insured** and the **Insured** agrees, as a condition to the issuance of this policy to accept such tender. In no event shall the Company be obligated to apply for, furnish, finance, or provide collateral for, attachment or appeals bonds.

### 1.3    CLAIM EXPENSE ALLOWANCE

    1.3.1    The Company shall pay **claim expenses** which shall first reduce **the claim expense allowance** and then reduce the limits of liability for all **claims** arising out of "the same, related or continuing  **professional services."**

### 1.4    INSURED

    1.4.1    The Insured: The word **Insured** whenever used in this policy, means:

        1.4.1.1    The **Named Insured** listed in item 1 of the Declarations;

        1.4.1.2    any attorney or professional corporation who is a partner of, stockholder in or employee of the **Named Insured** at the **effective date** of this policy for so long as such attorney or professional corporation remains a partner of, stockholder in or employee of the **Named Insured** and solely while providing **professional services** on behalf of the **Named Insured** or **predecessor firm(s).** The attorneys or professional corporations listed in item 2 of the Declarations shall be conclusively presumed to constitute all such **Insureds** at the **effective date** of this policy;

        1.4.1.3    any attorney or professional corporation which, during the **policy period,** becomes a partner, officer, director or employee of the **Named Insured** and only while providing **professional services** on behalf of the **Named Insured** or **predecessor firm(s);**

        1.4.1.4    any attorney or professional corporation who was previously a partner, officer, director or employee of the **Named Insured** or **predecessor firm(s)** only while providing **professional services** on behalf of such firms, but only to the extent no other insurance applies;

        1.4.1.5    any non-attorney who was, is now or hereinafter becomes an employee of the **Named Insured** or **predecessor firm(s)** only while acting within the scope of such person's duties as an employee of the **Named Insured** or **predecessor firm(s);**

        1.4.1.6    as respects the liability of each **Insured** as is otherwise covered herein, the heirs, executors, administrators, assigns and legal representatives of each **Insured** in the event of death, incapacity or bankruptcy;

        1.4.1.7    any attorney acting as "of counsel", but only while providing **professional services** on the behalf of the **Named Insured,** any employed attorney or any other employee of the **Named Insured** or **predecessor firm(s).**

### 1.5    POLICY TERRITORY

    1.5.1    This policy applies to any act, error or omission occurring anywhere in the world, provided a **claim** is made or suit is brought within the United States of America, its territories or possessions, or Canada, prior to the end of the **policy period,** and as long as the **claim** is made and reported to the Company during the **policy period** or an **extended reporting period** purchased in accordance with Condition 3.6 "Notice of Claim or Suit."

## 2.    EXCLUSIONS

### 2.1    THIS POLICY DOES NOT APPLY:

2.1.1    to any **claim** based on or arising out of any dishonest, intentional, fraudulent, criminal, or malicious act, error or omission committed by, at the direction of, or with the consent of an **Insured**;

2.1.2    to any **claim** made by an employer against an **Insured** who is a salaried employee of such employer;

2.1.3    to any **claim** arising out of bodily injury, including but not limited to sickness, emotional distress, disease or death of any person, or to injury to or destruction of any property, including the loss of use thereof;

2.1.4    to any loss sustained by the **Insured** as the beneficiary or distributee of any trust or estate;

2.1.5    to any **claim** made by an **Insured** or a present, former or prospective employer, partner, officer, director, owner, stockholder or employee or related individual of any **Insured**; provided however, that this exclusion shall not apply in circumstances where an **Insured** is providing legal services to any person in the ordinary course of the **Insured's** daily business activity;

2.1.6    to any **claim** based on or arising out of an **Insured's** act, error or omission as an officer, director, partner, trustee, stockholder or employee of a business enterprise or charitable organization or of a pension, welfare, profit sharing, mutual or investment fund or trust; this exclusion shall not apply in circumstances where an **Insured** is providing legal services to any such business enterprise, charitable organization or pension, welfare, profit sharing, mutual or investment fund or trust, in the ordinary course of the **Insured's** daily business activities, and for which a fee for **professional services** is charged and collected. This exclusion does not apply where the **Insured** holds a position as an officer or director of a not for profit organization(as defined by the US Internal Revenue Code), or a Bar association board or committee, but only to the extent the **Insured** is not indemnified by the organization or association and no other insurance applies;

2.1.7    to any punitive or exemplary damages, fines, sanctions, penalties or citations;

2.1.8    to any **claim** based on or arising out of or in connection with conduct of any business enterprise (including the ownership, maintenance or care of any property in connection therewith) owned by an **Insured** or in which any **Insured** is a partner, or which is directly or indirectly controlled, operated or managed by any **Insured** either individually or in a fiduciary capacity; provided however, that this exclusion shall not apply in circumstances where an **Insured** is providing legal services to any such business enterprise in the ordinary course of the **Insured's** daily business activities, and for which a fee for **professional services** is charged and collected;

2.1.9    to any **claim** based on or arising out of notarized certification of acknowledgment of a signature without the physical appearance before such Notary Public as an **Insured** hereunder of the person who is or who claims to be the person signing said instrument;

2.1.10    to any **claim** based on or arising out of any act, error or omission occurring prior to the **effective date** of this policy if the **Insured** at the **effective date** knew that such act, error or omission might be the basis of a **claim** or suit; to any **claim** where there is a prior policy which provides insurance for such liability or **claim** resulting from such act, error or omission whether or not the available limits of liability of such prior policy are sufficient to pay any liability or **claim** or whether or not the deductible provisions and limits of liability of such prior policy are different from this policy; or to any **claim** arising out of any act, error or omission occurring prior to the **effective date** of this policy unless such **claim** would have been covered by a prior policy of insurance but for the fact that the time within which to report a **claim** thereunder had expired;

2.1.11    to any **claim** based on or arising out of an **Insured's** capacity as an elected public official or as an employee of a governmental body, subdivision, or agency thereof unless such **Insured** is deemed an employee solely by virtue of rendering legal services to such governmental body, the remuneration for which services inure to the benefit of the **Named Insured**;

2.1.12    to any **claim** based on or arising out of an **Insured's** activities or capacity as a fiduciary under the Employee Retirement Income Security Act of 1974, as amended, or any regulation or order issued pursuant thereto, unless such **Insured** is deemed to be a fiduciary solely by reason of legal advice rendered with respect to any employee benefit plan;

2.1.13    to any **claim** based on or arising out of alleged discrimination by an **Insured** including those based on race, color, creed, age, sex, nationality, marital status or sexual orientation;

2.1.14    to any **claim** based on or arising out of alleged sexual harassment or misconduct by the **Insured**;

2.1.15    to any **claim** based on or arising out of rendering investment advice by an **Insured** to any person in connection with the purchase or sale of any investment or property, including by not limited to, securities, real property, commodities or franchises, or based on or arising out of such **Insured's** services or capacity as a broker, dealer, investment advisor, accountant, real estate broker or real estate agent;

2.1.16    to any **claim,** under any circumstance due to nuclear reaction, radiation or contamination, regardless of cause;

2.1.17    to any **claim** arising out of conversion, misappropriation or improper commingling of client funds or trust account funds;

2.1.18    to any **claim** based on or arising out of an obligation assumed by contract other than an obligation to perform **professional services;**

2.1.19    to any **claim** based on disputes over fees for **professional services;**

2.1.20    to any **claim** based on or arising out of defects in any title which are not disclosed in public records and which any **Insured** knew about when the title policy was issued;

2.1.21    to any liability assumed by the **Insured** under any agreement where the **Insured** has agreed to share in any loss payments or expenses due under any title policy.

# 3.    CONDITIONS

**3.1    DEFINITIONS.**        As used in this policy:

**3.1.1    Claim** means a demand for money or services, including the service of suit or institution of arbitration proceedings against an **Insured**.

**3.1.2    Claim expense** means (1) fees charged by an attorney designated by the Company and (2) all other fees, costs, and expenses resulting from the investigation, adjustment, defense, and appeal of a **claim,** suit or proceeding arising in connection therewith, if incurred by the Company, or by the **Insured** with prior written consent of the Company.  The term **claim expense** does not include salaries or expenses of regular employees or officials of the Company or the **Named Insured.**

**3.1.3    Damages** means any monetary award by way of judgement, final arbitration or settlement but does not include:

3.1.3.1    awards deemed uninsurable by law;

3.1.3.2    restitution, reduction, or set off of any fees, costs, consideration or expenses paid to or charged by any **Insured** for or arising out of the rendering of **professional services.**

**3.1.4    Effective date** as used in this policy means the effective date of this policy listed in the Declarations or **Extended Reporting Endorsement.**

**3.1.5    Extended Reporting Endorsement** means an endorsement issued by the Company providing for an **extended reporting period**.

**3.1.6    Extended reporting period** means that period of time after the end of the **policy period** for reporting claims, arising out of an act, error or omission which occurred prior to the end of the **policy period** and which would have been insured by this policy but for its termination.

3.1.7    **Loss inclusion date** as used in this policy means the loss inclusion date of this policy as listed in the Declarations.

3.1.8    **Personal injury** as used in subparagraph 1.1.3 of Insuring Agreements 1 - "Coverage" means:

3.1.8.1    False arrest, detention or imprisonment, wrongful entry or eviction or other invasion of private occupancy, malicious prosecution or humiliation.

3.1.8.2    The publication or utterance of libel, slander or other defamatory or disparaging material, or publication, or utterance in violation of an individual's right of privacy.

3.1.9    **Policy Period** means the period of time between the inception **effective date** listed in the Declarations and the date of termination, expiration or cancellation of coverage and specifically excludes any **extended reporting period** thereunder.

3.1.10    **Predecessor firm** means any attorney, partnership, limited liability partnership, limited liability corporation or professional corporation engaged in the private practice of law to whose financial assets and liabilities the firm listed as **Named Insured** in the Declarations is the majority successor in interest.

3.1.11    **Professional services** shall be deemed, for the purposes of this policy, to include all services or activities performed by an Insured attorney in an attorney-client relationship on behalf of one or more clients.

3.1.12    **Claim expense allowance** means an amount equal to one half of the per claim limit of liability per policy period stated in the Application and listed in the Declarations or $1,000,000, whichever is less. For purposes of calculating the **claim expense allowance**, all claim expenses including those paid or payable as a deductible shall be included in the **claim expense allowance**.

3.1.13    **Limit of liability** is listed in the Declarations and is applicable to **all claims** arising out of the same, related or continuing **professional services** for all **damages**, including interest and **claim expenses** exceeding the claim expense allowance, arising out of the same or related professional services without regard to the number of Claims or claimants.

3.1.14    **Deductible** means the amount for which the Insured is financially responsible stated in the Declarations.

3.1.15    **Formal mediation** means the voluntary process by which a qualified professional mediator is chosen by the parties to the **claim** with agreement by the Company, meets with and intercedes between the parties in an attempt to resolve the **claim**.

## 3.2    LIMITS OF LIABILITY

3.2.1    If additional **claims** are subsequently made which arise out of the same or related **professional services** as a **claim** already made, all such **claims**, whenever made, shall be considered first made within the **policy period** or **extended reporting period** in which the earliest **claim** arising out of such **professional services** was first made and all such **claims** shall be subject to the same limits of liability.

3.2.2    Subject to the above provisions respecting "all **claims** arising out of the same, related or continuing **professional services**", the limits of liability listed in the Declarations as aggregate represent the total limits of the Company's liability arising out of all **claims** first made during the **policy period** or during each **extended reporting period**.

3.2.3    The inclusion in the policy of more than one **Insured** shall not operate to increase the limits of the Company's liability.

3.2.4    The **deductible** shall be subtracted first from the **claim expense allowance** and then the total limit of liability resulting from each **claim** reported to the Company during the **policy period**, subject to an annual aggregate deductible equal to twice the deductible amount listed in the Declarations.

3.2.5    If the Company has paid any amounts in settlement or satisfaction of **claims** for **damages** in excess of the applicable **limits of liability**, or within the amount of the applicable deductible, or if the Company has **paid** any amounts for which the Company has no liability under this policy, the **Insureds** shall be jointly and severally liable to the Company for any and all such amounts and, on demand, shall promptly reimburse such amounts to the Company.

3.2.5.1    If a **claim** reported to the Company is resolved through the use of **formal mediation** the **deductible** will be reduced by fifty percent (50%) to a maximum reduction of $12,500; or the **deductible** will be reduced by 50% to a maximum of $12,500 if the **Insured** agrees, at the Company's written request to submit such claim to binding arbitration. The right to elect arbitration shall be the Company's sole option; provided, however that no such **claim** will be submitted to arbitration without prior written consent of the **Insured**.

3.2.6    When a non-attorney refers **professional services** to the **Insured**, the Company will extend the same defense as is provided the ALPS **Insured** to the non-attorney referring party. Referral coverage applies only to defense costs, not **damages**. This defense does not increase the per claim or aggregate limit of liability shown in item 4 of the policy Declaration, nor does it alter the Conditions 3.2 **Limits of Liability**.

## 3.3    SUPPLEMENTARY PAYMENTS

3.3.1    The Company shall pay up to $500 for loss of earnings for each attorney listed in 1.4 for each day or part of the day for such **Insureds** attendance at a trial, hearing or arbitration proceeding arising from a claim against such **Insured** for damages if requested in writing by the Company, but the maximum amount payable by the Company during the policy period and any **extended reporting period**, if applicable, shall not exceed $5000.

3.3.2    The Company shall pay up to $2500 per policy period for each lawyer included in 1.4.1.2, 1.4.1.3, and 1.4.1.7 for attorneys fees and other costs, expenses or fees resulting from the investigation or defense of a proceeding before a state licensing board, peer review committee or governmental regulatory body incurred as the result of a notice of a proceeding first received by the **Insured** and reported to the company during the **policy period**, arising out of any negligent act error or omission or **personal injury** in the rendering of or failure to render **professional services** by an **insured** covered under this policy. No deductible shall apply to paragraph 3.3. Any such payment made pursuant to this paragraph shall reduce 3.1.12 **Claim expense allowance** and is in addition to the **limits of liability** as stated in item 4 of the declarations.

## 3.4    INNOCENT INSURED COVERAGE

3.4.1    Whenever coverage under any provision of this policy would be excluded, suspended or lost because of exclusion 2.1.1 relating to any judgment or final adjudication based on or arising out of any dishonest, intentional, fraudulent, criminal, or malicious act, error or omission committed by, at the direction of, or with the consent of an **Insured**, the Company agrees that such insurance as would otherwise be afforded under the policy shall apply with respect to each and every **Insured** who did not personally commit or personally participate in committing one or more of the acts, errors or omissions described in exclusion 2.1.1. The **Insured** entitled to the benefit of this Condition 3.3 shall comply with all necessary provisions of this policy after obtaining knowledge of the failure of any other **Insured** or employee to comply therewith.

3.4.2    With respect to Condition 3.3.1 above, the **Insured** agrees that the Company's obligation to pay in such event shall be in excess of the deductible and in the excess of the full extent of any firm assets held for or on behalf of any **Insured** who is not a beneficiary of Condition 3.3.1.

## 3.5    EXTENDED REPORTING ENDORSEMENT

3.5.1    In case of cancellation, nonrenewal or expiration of this policy by either the **Named Insured** or the Company, the **Named Insured** shall have the right, upon payment of an additional premium not more than thirty (30) days after termination of the policy, to have an **Extended Reporting Endorsement** issued on a guaranteed annually renewable basis which provides coverage for **claims** first reported after the end of the **policy period** for any act, error or omission that occurred before the end of the **policy period** but after the **loss inclusion date** and otherwise covered by the policy. Additionally, and under the same conditions, at the request of an **Insured** the company may issue an **Extended**



**Reporting Endorsement** on retirement, death or other change in professional status. The additional premiums for such **Extended Reporting Endorsement** shall be computed from the following table in accordance with the Company's rules, rating plans and premiums in effect on the **effective date** of each **Extended Reporting Endorsement**.

| Number of Years Following The Termination of the Policy | Percentage of Current Year's Premium |
|---|---|
| FIRST | 85% |
| SECOND | 65% |
| THIRD | 50% |
| FOURTH | 37% |
| FIFTH | 30% |
| SIXTH | 25% |
| SEVENTH and Subsequent | 15% |

3.5.2    The right to an **Extended Reporting Endorsement** under this section shall not be available to any **Insured** in the following instances:

3.5.2.1    Where cancellation by the Company is for failure to pay the premiums when due or for failure to pay all other amounts due to the Company.

3.5.2.2    Where any **Insureds** license or right to practice law is revoked, suspended by or surrendered at the request of any regulatory authority.

3.5.3    After five consecutive years as a **Named Insured** upon retirement, the **Named Insured** shall be entitled, at no additional premium, to an **Extended Reporting Endorsement** and in the event of death or total permanent disability, the **Named Insured** shall be entitled, at no additional premium, to an **Extended Reporting Endorsement** under the same terms and conditions as previously described.

3.5.4    The **Extended Reporting Endorsement** provides a single separate decreasing aggregate limit of coverage equal to the **limit of liability** under this policy for claims first reported during the **extended reporting period**. Each **claim** paid during the **extended reporting period** will reduce the aggregate limit available under the **Extended Reporting Endorsement** and the aggregate limit will not be reinstated during any remaining **extended reporting period**.

### 3.6    OTHER INSURANCE

3.6.1    This insurance shall be in excess of any other valid and collectible insurance whether such insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over and above the limits of liability provided in this policy.

### 3.7    NOTICE OF CLAIM OR SUIT

3.7.1    Upon an **Insured's** becoming aware of any act, error or omission which happens before the end of the **policy period** and which could reasonably be expected to be the basis of a **claim** or suit covered hereby, written notice shall be given by or on behalf of the **Insured** to the Company or any of its authorized agents as soon as practicable, together with the fullest information obtainable. If a **claim** is made or a suit is brought against an **Insured**, the **Insured** shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

3.7.2    If during the **policy period** or any **extended reporting period**, the Company shall be given written notice of any act, error or omission which happened before the end of the **policy period** and after the **loss inclusion date**, which could reasonably be expected to give rise to a **claim** against an **Insured** under this policy, any **claim** which subsequently arises out of such act, error or omission shall be deemed to be a **claim** made and reported during the **policy period** or **extended reporting period** in which the written notice was received, provided that such **claim** is in fact asserted against the **Insured** within six (6) years after the end of the last **policy period** with the Company.

### 3.8    ASSISTANCE AND COOPERATION OF THE INSURED

3.8.1    The **Insured** shall cooperate with the Company and, upon the Company's request, assist in making settlements, in defending suits, and in enforcing any right of contribution or indemnity against any person or organization, other than an employee of an **Insured**, who may be liable to the **Insured** because of any act, error or omission with respect to which insurance is afforded under this policy; and the **Insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.

3.8.2    The **Insured** shall first notify the Company and shall exercise his or her right to either reject or demand the arbitration of any claim made against the **Insured** in accordance with written instruction of the Company.

3.8.3    The **Insured** shall not make any payments, admit any liability, settle any **claims**, assume any obligation or incur any expense without the prior written consent of the Company.

### 3.9    ACTION AGAINST COMPANY

3.9.1    No action shall lie against the Company unless, as a condition precedent thereto, the **Insured** shall have fully complied with all the terms of this policy, and until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the **Insured** or by written agreement of the **Insured**, the claimant and the Company.

3.9.2    Any person or organization not **Insured** hereunder or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Company as a party to any action against the **Insured** to determine the **Insured's** liability, nor shall the Company be impleaded by the **Insured** or his legal representative. Bankruptcy or insolvency of the **Insured** or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

### 3.10    SUBROGATION

3.10.1    In the event of any payment under this policy, the Company shall be subrogated to all the **Insured's** rights of recovery against any person or organization and the **Insured** shall execute and deliver such instruments and papers as may be required by the Company and do whatever else is necessary to secure such rights. The **Insured** shall do nothing after a **claim** is made or settled to prejudice such rights.

3.10.2    The Company shall not exercise any such subrogation rights against any persons, firms or corporations included in the definition of **Insured** provided, however, the Company reserves the right to exercise any rights of subrogation against an **Insured** in respect of any **claim** brought about or contributed to by the intentional, dishonest, fraudulent, criminal or malicious act or omission of such **Insured.**

3.10.3    Any amounts recovered through subrogation shall be apportioned as follows: First, to the repayment of expenses incurred in enforcing subrogation; Second, to repayment of any loss and expense payments by the **Insured** in excess of any **deductible(s)**; Third, to any loss and expense payments by an excess carrier on behalf of the **Insured;** Fourth, to any loss and expense payments by any primary carrier, including the Company, on behalf of the **Insured;** and Last, to repayment of the **Insured's deductible.**

### 3.11    CHANGES

3.11.1    Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or stop the Company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by an authorized representative of the Company.

### 3.12    ADDITIONS OR DELETIONS OF ATTORNEYS INSURED

3.12.1    All additions or deletions of attorneys insured by the Company during the **policy period** must be reported to the Company within thirty (30) days after the time such additions or deletions occur. The Company shall neither require additional premium payments for any additions of attorneys to the **Insured's** policy during the **policy**

**period** nor refund premium for any deletions of attorneys from the **Insured's** policy during the **policy period**.

**3.13    ASSIGNMENT**

3.13.1    The interest hereunder of any **Insured** is not assignable.

**3.14    CANCELLATION OR NONRENEWAL**

3.14.1    This policy may be canceled by the **Named Insured** by surrender thereof to the Company or any of its authorized representatives or by mailing or delivering to the Company written notice stating when thereafter such cancellation shall be effective. If canceled by the **Named Insured**, the company shall retain the customary short rate proportion of the premium.

3.14.2    This policy may be canceled by the Company by mailing to the **Named Insured** as shown in the Declaration, written notice stating when, not less that thirty (30) days thereafter, such cancellation shall be effective. Such notice shall be conclusive on all **Insureds** hereunder. However, if the Company cancels the policy because the **Insured** has failed to pay a premium when due or to repay a deductible upon demand, this policy may be canceled by the Company by mailing a written notice of cancellation to the **Named Insured** stating when, not less than ten (10) days thereafter, such cancellation shall be effective. Proof of mailing shall be sufficient proof of notice and the effective date of cancellation stated in the notice shall become the end of the policy period. If canceled by the Company, earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Payment or tender of unearned premium is not a condition of cancellation

**3.15    ENTIRE CONTRACT**

3.15.1    By acceptance of this policy, the **Insured** agrees that the statements in the Declarations and in the **Insured's** application for this policy are true and correct, that the Declarations and the **Insured's** application form a part of this policy, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between the **Insured** and the Company relating to this insurance.

**3.16    POLICY CONDITIONS:  NONASSESSABLE POLICY**

3.16.1    This policy is not assessable.

**3.17    SPECIAL LAWS**

3.17.1    Any and all provisions of this policy which are in conflict with the laws of the jurisdiction wherein this policy is issued are understood, declared and acknowledged by this Company to be amended to conform to such laws.

**3.18    LIBERALIZATION**

3.18.1    If the Company files revisions to the terms and conditions of this policy to provide more coverage without an additional premium charge, then this policy will automatically provide the additional coverage as of the date the filed revision is effective.

**3.19    NOTICES**

3.19.1    All notices under this policy shall be mailed first class postage prepaid to the following addressees,

A.    To the Company:

ALPS
111 North Higgins, Suite 200
P.O. Box 9169
Missoula, MT 59807-9169
(800) 367-4366

B.    To the Named Insured:

To the Signatory as provided on page three(3) of the Firm Application, to the address as shown in item number one of the Declaration. It is agreed that the Company will be notified in writing of any change in authorized Signatory and/or mailing address.

**In witness whereof,** the Company has caused this policy to be signed by its President and Secretary and Countersigned on the Declaration page by a duly authorized representative of the Company.


*Robert W. Minto, Jr.*
Robert W. Minto, Jr. - President


ATTEST:

*Kimberly A. McGuire Browne*
Kimberly A. McGuire Browne - Secretary

## MONTANA CHANGES
## CANCELLATION AND NONRENEWAL

This Endorsement shall apply to and form a part of your policy issued by Attorneys Liability Protection Society, Inc., A Risk Retention Group. The effective date of this endorsement is the inception date of your policy. CONDITION 3.14 CANCELLATION OR NONRENEWAL is hereby deleted and replaced with the following:

### 3.14    CANCELLATION OR NONRENEWAL

3.14.1    This policy may be cancelled by the Named Insured by surrender it to the Company or any of its authorized representatives, or by mailing or delivering to the Company written notice stating when thereafter such cancellation shall be effective. If cancelled by the Named Insured, the premium refund may be less than pro rata.

3.14.2    The Company may not cancel this policy before the expiration date of the policy except: for reasons specifically allowed by statute; for failure to pay a premium when due; or on grounds stated in the policy which pertain to the following: i) material misrepresentation; ii) substantial change in the risk assumed, except to the extent that the Company should reasonably have foreseen the change or contemplated the risk when the contract was written; iii) substantial breaches of contractual duties, conditions or warranties; iv) determination by the commissioner that continuation of the policy would place the Company in violation of the Montana insurance code; v) financial impairment of the Company; or vi)  for any reason approved by the commissioner.

3.14.3    If the Company cancels the policy because of reasons stated in 3.14.2, it may do so by mailing to the Named Insured a written notice of cancellation stating when, not less than ten (10) days thereafter, such cancellation shall be effective.

3.14.4    If this policy is in effect for less than 60 days and is not a renewal or continuation, the Company may cancel for any reason. Such a cancellation is not effective until 10 days after the notice is delivered or mailed to the Named Insured.

3.14.5    If this policy has been issued for longer than 1 year and if either the premium is prepaid or an agreed term is guaranteed for additional premium consideration, the Company may not cancel except: for reasons specifically allowed by statute; for failure to pay a premium when due; or on grounds stated in the policy at 3.14.2 i) through vi).

3.14.6    If the Company non-renews this policy, the Company will mail notice to the Named Insured at least 30 days before the end of the policy period.

3.14.7    Proof of mailing will be sufficient proof of notice, and the notice's effective date of cancellation will become the end of the policy period. If the Company cancels the policy, it will compute earned premium on a pro-rata basis. The Company may make the premium adjustment at the time cancellation is effected or as soon thereafter as is practicable. Payment or tender of unearned premium is not a condition of cancellation.

MT04 – PLP002a (07/01/2001)

**EX. G**

STATE OF SOUTH CAROLINA )
          )   IN THE COURT OF COMMON PLEAS
COUNTY OF Richland    )   FOR THE FIFTH CIRCUIT
          )
          )
Gregory Singleton, as Personal   )   Civil Action No. 04-CP-40
Representative for the Estates of   )
Barry Naylor, Yvonne Naylor, and   )
Emdia Naylor, and Barry Naylor, II,   )
individually,       )
      Plaintiff,   )
          )   SUMMONS
    v.      )
          )
Ernest William Cromartie, II and   )
Cromartie Law Firm, L.L.P.,   )
          )
      Defendant.   )
_____ )

TO DEFENDANT ABOVE-NAMED:

    YOU ARE HEREBY SUMMONED and required to answer the Complaint in this

action, a copy of which is herewith served upon you, and to serve a copy of your Answer to

said Complaint on the subscriber at P. O. Box 1091, Orangeburg, South Carolina, within

thirty (30) days from the service hereof, exclusive of the date of such service; and if you fail

to answer the Complaint within the time aforesaid, judgment by default will be rendered

against you for the relief demanded in the Complaint.

         LAW OFFICE OF GLENN WALTERS

         *Glenn Walters*
         Glenn Walters
         348 St. Paul Street, NE
         P. O. Box 1091
         Orangeburg, South Carolina 29116
         803 531-8844

Richland, South Carolina
_____1/29_____, 2004

STATE OF SOUTH CAROLINA    )
                           )    IN THE COURT OF COMMON PLEAS
COUNTY OF Richland         )    FOR THE FIFTH CIRCUIT
                           )
                           )
Gregory Singleton, as Personal    )    Civil Action No. 04-CP-40
Representative for the Estates of  )
Barry Naylor, Yvonne Naylor, and  )
Emdia Naylor, and Barry Naylor, II,)
individually,                      )
                    Plaintiff,     )
                                   )    **COMPLAINT**
            v.                     )    (Professional Malpractice – Negligence)
                                   )    (Jury Trial)
                                   )
Ernest William Cromartie, II and   )
Cromartie Law Firm, L.L.P.,        )
                                   )
                    Defendant.     )

Plaintiffs, complaining of the Defendant above-named, would show this Court as follows:

## Jurisdiction and Venue

1.    Plaintiff, Gregory Singleton (hereinafter "Plaintiff Singleton), is a citizen and resident of Orangeburg County, South Carolina. The Estates of Barry Naylor (86-ES-40-00679), Yvonne Naylor (86-ES-40-00594), and Emdia Naylor (88-ES-40-00629) are being probated in Richland County, South Carolina.

2.    Plaintiff, Barry Naylor II, is a resident and citizen of Edgefield County, South Carolina and is an heir of the above-named estates.

3.    Defendant, Ernest William Cromartie, is admitted to the bar and licensed to practice law in the State of South Carolina. The Defendant is a resident of Richland County, South Carolina, and maintains an office in that County for the purpose of practicing law.

4.    The Cromartie Law Firm, L.L.P. is organized under the laws of the State of South Carolina and has its principal place of business in the County of Richland in South Carolina.

5.    At all times herein mentioned, Ernest William Cromartie was an agent and servant of Defendant Cromartie Law Firm, L.L.P. and was acting within the scope and

under the authority of his employment and/or agency; all acts of said individual were ratified by the Defendant Cromartie Law Firm, L.L.P.

6.  This Court has jurisdiction over the parties and subject matter of this action.

7.  The proper venue for this action is Richland County, South Carolina.

<u>Facts</u>

8.  On or about May 20, 1986, the Defendant was retained by Jesse Singleton, Emma Singleton, Tyrone Singleton, Gregory Singleton, and Mary Roberts for the purpose of probating the Estates of Barry Naylor, Yvonne Naylor, and Emdia Naylor.

9.  Defendant agreed to perform all necessary probate services for a fee not to exceed three percent of the appraised value of the estates.

10.  Prior to Plaintiff Singleton's appointment, Jesse Singleton initially served as personal representative for the three Estates.

11.  Upon information and belief, Defendant opened Barry Naylor's Estate on June 17, 1986; Yvonne Naylor's Estate on June 2, 1986; and Emdia Naylor's Estate on July 13, 1988.

12.  Defendant failed to timely file the necessary documents and probate the Estates of Barry Naylor, Yvonne Naylor, and Emdia Naylor. Thus, seventeen years have elapsed since the Defendant was retained and the Estates have not been probated.

13.  When the Defendant did attempt to probate the above-mentioned estates, his efforts always proved to be futile. On numerous occasions, the Probate Court rejected his attempts because the Defendant presented erroneous, incomplete, and inadequate documents to be filed. Moreover, on all of these occasions, the Probate Court returned the documents to the Defendant.

14.  Whenever Plaintiff Singleton was notified by the Probate Court that documents had not been properly filed, he would contact the Defendant and inquire as to the status of the Estates. In response to such inquiries, Defendant repeatedly assured Plaintiff Singleton that all necessary documentation had been completed and filed with the court.

15.  In response to Defendant's conduct, Plaintiff Singleton discharged the Defendant and retained Sweeny, Wingate & Barrow, P.A. as substitute counsel to properly probate the Estates.

<u>Cause of Action For Malpractice</u>
(Negligence)

16.    The allegations contained hereinabove are repeated as if fully alleged herein verbatim.

17.    An attorney-client relationship existed between Defendant and Plaintiff Singleton.

18.    As a result of the attorney-client relationship created by the agreement executed between the parties, Defendant had a duty to represent the Plaintiff Singleton in all relevant matters with the reasonable care, skill, and diligence possessed and exercised by the ordinary attorney in similar circumstances.

19.    Defendant also had a duty to properly probate the Estates in order that the heirs of the Estates, specifically, Plaintiff Naylor, would receive their inheritance.

20.    Defendant's conduct in failing to timely probate the above-mentioned Estates was a breach of Defendant's duty to exercise reasonable care, skill, and diligence on behalf of the Plaintiffs. The Defendant's conduct constituted both a negligent act and a breach of the contractual obligation to Plaintiff Singleton.

21.    As a proximate and direct result of Defendant's negligent and reckless conduct, the Plaintiffs have sustained injury and loss.

22.    As a further direct and proximate result of Defendant's failure to timely probate the Estates, Plaintiff Singleton has been forced to retain substitute counsel and to incur additional attorneys' fees to perform the services that should have been performed by the Defendant.

     WHEREFORE, Plaintiffs pray judgment against the Defendant in an amount sufficient to compensate Plaintiffs for actual and punitive damages, for the cost of this action, and for such other and further relief as the Court may deem just and proper.

LAW OFFICE OF GLENN WALTERS

Glenn Walters, Esquire
Attorney for Plaintiff
Post Office Box 1091
Orangeburg, SC 29116
(803) 531-8844

Richland, South Carolina

1/29, 2004.

RECEIVED
2004 JAN 30 PM 5 48
RCSD